STATE EX REL. KLINKE, Petitioner-Respondent, V. DEPART-
MENT OF HEALTH & SOCIAL SERVICES, and another,
Appellants.

Court of Appeals

*No. 77–599. Argued October 18, 1978.—Decided December 1, 1978.*
(Also reported in 273 N.W.2d 379.)

For the appellants the cause was argued by *Nadim Sahar,* assistant attorney general, with whom on briefs was *Bronson C. La Follette,* attorney general.

For the petitioner-respondent there was a brief and oral argument by *Charles Bennett Vetzner,* assistant state public defender.

Before Dean, P.J., Donlin and Foley, JJ.

Foley, J.   We must determine what due process rights should be accorded prison inmates subject to parole rescission. By "parole rescission" we refer to the action taken by the Wisconsin Parole Board which revokes a parole already granted but not yet executed.[1]

---

[1] In this opinion we refer to the granting and rescinding of parole by the Wisconsin Parole Board. This characterization of the Board action is that of the parties and we adopt it in this opinion even though the Board makes recommendations only which are then acted upon by the Department of Health and Social Services.

On January 25, 1977, the Parole Board granted a parole to Donald Klinke, an inmate at Kettle Moraine Correctional Institution (KMCI). His release date was to be March 14, and he was scheduled to be transferred to the Outagamie County Jail on February 10 to permit him to begin work at a job he had obtained in anticipation of his parole.

On February 6, a prison guard reportedly saw Klinke drinking from a glass containing a liquid which "smelled and tasted alcoholic." The guard filed a conduct report on February 7 charging him with intoxication and unauthorized possession of an intoxicant. The same day, Klinke was given written notice of the charge. The written notice informed Klinke that the possible consequences of a guilty finding were forfeiture of good time, segregation up to 120 days and isolation up to 10 days. Neither by the written notice nor otherwise was Klinke warned that his parole might be rescinded if he was found guilty of the charge.

The notice stated Klinke had the right to demand a formal hearing before the disciplinary committee, the right to cross-examine adverse witnesses, the right to present witnesses, the right to have a "staff advocate" assisting him,[2] and the right to appeal the disciplinary committee's decision. Klinke was also given a waiver form by which he could indicate he did not "demand a Formal Hearing." There was no indication any other right was being waived. According to Klinke, he was told by a prison official that the formal hearing would probably delay his transfer to the Outagamie County Jail and he could instead "go the short way" and waive the hearing and have an immediate determination on the charge. Klinke signed the waiver but stated in writing,

---

[2] A staff advocate is an employee, not an attorney, at the correctional facility who consults with and presents the case for the resident.

"I didn't drink anything. I didn't go due process because I didn't have time."

On February 8, Klinke appeared before the disciplinary committee and on the basis of his waiver was denied the right to a formal hearing.[3] He was adjudged guilty of "intoxication" and received punishment of five days restrictive confinement and five days loss of good time.

On February 10, the day Klinke was to be transferred to the Outagamie County Jail, he was summoned without prior notice to a hearing before the Parole Board. The Board did not allow him to contest the finding of "intoxication" made by the disciplinary committee and on the basis of that finding, his parole was rescinded and the Board deferred further consideration of his parole for nine months. Klinke also lost his work release privileges causing him to lose a job in Fond du Lac paying $2.30 per hour.

On August 5, 1977, a petition for a writ of certiorari was filed in the circuit court for Outagamie County seeking reversal of the Parole Board decision. On review, because Klinke had not been given notice of the Parole Board hearing, the circuit court voided the rescission and ordered that if the Board again attempted to rescind Klinke's parole, it must give advance written notice of the hearing. The circuit court order further required the Board to allow Klinke the right to present his testi-

[3] The rights which the disciplinary committee found waived by Klinke's waiver of his right to "demand a Formal Hearing" were roughly those mandated in prison disciplinary hearings by *Wolff v. McDonnell*, 418 U.S. 539 (1974). In addition to *Wolff* rights, the right to cross-examine witnesses and to appeal the decision were available to Klinke. Klinke argues that when he signed the waiver, the notice and waiver inadequately informed him that he also waived the other rights which accompanied the formal hearing. He contends he was misled and believed he retained the other rights at the informal hearing he was to receive after he signed the waiver.

mony and affidavits from others concerning the factual basis for the rescission. On August 25, 1977, a second rescission hearing was held. At its conclusion the Board again rescinded Klinke's parole.

Klinke then filed a second petition for a writ of certiorari with the circuit court challenging the August 25 rescission. In its decision dated January 23, 1978, the circuit court concluded that the manner in which Klinke's parole was rescinded violated his due process rights. The court further concluded that before the Board could use a disciplinary committee finding of a prison rule infraction to rescind Klinke's parole, he was entitled to a hearing at which he must be afforded the due process rights given to individuals facing parole revocation by *Morrissey v. Brewer,* 408 U.S. 471 (1972) and *Gagnon v. Scarpelli,* 411 U.S. 778 (1973). The circuit court order provided the hearing could, at the option of the Parole Board, take the form of a prison disciplinary hearing or could be a special proceeding before the Parole Board. The court ordered that if no hearing was held in twenty-five days, Klinke was to be released on parole.

No hearing was held; the Department filed this appeal instead. On Klinke's motion, the Wisconsin Supreme Court dissolved the automatic stay of the trial court's order which then accompanied appeals by governmental agencies,[4] and Klinke was released on March 13, 1978, shortly before his mandatory release date. Thus, the net effect of the February 6 incident was that Klinke lost his parole, lost his job opportunity in Outagamie county, lost a $2.30 per hour work release job in Fond du Lac, and remained in prison one year longer than he otherwise would have; all on the basis of a guard's re-

---

[4] Sec. 817.26, Stats. (1975), provided for automatic stays of judgment for appeals by governmental bodies prior to its repeal effective August 1, 1978 by ch. 187, Laws of 1977.

port that he drank a limited amount of a drink allegedly containing alcohol.

These facts present a compelling basis for requiring a change in the present rescission procedure to insure that a liberty interest of this significance will not be lost without reasonable due process protection.

In *Morrissey* the Court determined that the "conditional liberty" of a parolee is an interest deserving of due process protection. This interest was characterized in terms of the extreme difference between release on parole and incarceration. *Morrissey, supra,* at 482. In determining what process is due, the Court, considering the state's interest in protecting its citizens, concluded that the state had no interest in revoking parole arbitrarily. The Court noted:

> The parolee is not the only one who has a stake in his conditional liberty. Society has a stake in whatever may be the chance of restoring him to normal and useful life within the law. Society thus has an interest in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given the breach of parole conditions. . . . And society has a further interest in treating the parolee with basic fairness: fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding reactions to arbitrariness. 408 U.S. at 484 (citations omitted).

Based on *Morrissey,* there is required before termination of parole, "some orderly process, however informal." 408 U.S. at 482. *Morrissey* set forth the following requirements:

(1) a written notice of the claimed violations of parole;
(2) disclosure to the parolee of the evidence against him;
(3) opportunity to be heard in person and to present witnesses and documentary evidence;

(4) the right to confront and cross-examine adverse witnesses in the absence of good cause for not allowing it;

(5) a neutral and detached hearing body;

(6) a written statement of the evidence relied upon and the reasons for revoking parole.

The Court commented again in *Gagnon* on the interests to be served by affording such rights:

Both the probationer or parolee and the State have interests in the accurate finding of fact and the informed use of discretion—the probationer or parolee to insure that his liberty is not unjustifiably taken away and the State to make certain that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safety of the community. 411 U.S. at 785.

The Court in *Gagnon* added to the necessary *Morrissey* procedures the conditional right to representation by counsel where it is deemed necessary to insure the effective use of *Morrissey* rights. In reference to the conditional nature of the right the Court noted:

Presumptively, it may be said that counsel should be provided in cases where, after being informed of his right to request counsel, the probationer or parolee makes such a request based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present. 411 U.S. at 790.

The Parole Board objects to requiring *Morrissey-Gagnon* rights for parole rescission and argues that a prisoner facing rescission is only entitled to the disciplinary hearing rights now accorded and a rescission hearing of the type Klinke had in August, 1977, with only the right

to notice, to testify, and to present affidavits. Reliance for this position is placed on *Wolff v. McDonnell*, 418 U.S. 539 (1974) where less than the full *Morrissey-Gagnon* rights were accorded prisoners facing disciplinary actions for prison rule violations. The rights required by *Wolff* are:

(1) written notice of the alleged rule infraction;

(2) written statement as to the evidence relied upon and the reasons for the disciplinary action;

(3) opportunity to present witnesses and documentary evidence when permitting the inmate to do so would not be unduly hazardous to institutional safety or correctional goals;

(4) the assistance of a fellow inmate or other substitute-counsel, where an illiterate inmate is involved or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.

The Court in *Wolff* justified refusal of the right to cross-examine adverse witnesses and have counsel on the basis of the balance between the state and individual interests involved. The Court stressed the state's interest in maintaining order in prisons and concluded that the extension of all *Morrissey-Gagnon* rights to internal disciplinary hearings would have a disruptive effect. The Court noted the lesser interest of the prisoner in a disciplinary hearing, distinguishing it from parole revocation in the following manner:

Revocation of parole may deprive the parolee of only conditional liberty, but it nevertheless "inflicts a 'grievous loss' on the parolee and often on others." *Morrissey, Id.,* at 482, 92 S. Ct., at 2601. Simply put, revocation proceedings determine whether the parolee will be free or in prison, a matter of obvious great moment to him. For the prison inmate, the deprivation of good time is not the same immediate disaster that the revocation of parole is for the parolee. The deprivation, very likely, does not

then and there work any change in the conditions of his liberty. It can postpone the date of eligibility for parole and extend the maximum term to be served, but it is not certain to do so, for good time may be restored. Even if not restored, it cannot be said with certainty that the actual date of parole will be affected; and if parole occurs, the extension of the maximum term resulting from loss of good time may affect only the termination of parole, and it may not even do that. . . . (Loss of good time) is qualitatively and quantitatively different from the revocation of parole or probation. 418 U.S. at 560–561.

In our consideration of whether *Morrissey-Gagnon* or *Wolff* rights should be afforded individuals subject to possible parole rescission, we see little difference between parole revocation and parole rescission. The only difference is whether the loss of parole already granted occurs before or after conditional release from prison. We do not find this difference sufficiently significant to justify a lesser standard of due process protection for rescission. In both instances, the effect on the individual is immediate and the interest the same, freedom from imprisonment. In Klinke's case it additionally meant the loss of a job, the same loss an employed parolee would suffer upon revocation. While the psychological and emotional impact attendant to revocation may be quantitatively greater, the effect of a rescission is qualitatively the same. We also find the state's interest in promoting rehabilitation and in discouraging arbitrariness to be identical whether revocation or rescission is being considered. This finding is supported by the majority of the courts which have previously considered this issue.[5]

[5] *Drayton v. McCall*, 445 F. Supp. 305 (D. Conn. 1978); *Batchelder v. Kenton*, 383 F. Supp. 299 (C.D. Cal. 1974); *Anderson v. Nelson*, 352 F. Supp. 1125 (N.D. Cal 1972); *Colligan v. United States*, 349 F. Supp. 1233 (E.D. Mich 1972); *In re Prewitt*, 8 Cal.3d 470, 474, 503 P.2d 1326, 1330, 105 Cal. Rptr. 318 (1973); *Demar v. Wainwright*, 354 So.2d 366 (Fla. 1978); *Monohan v. Burdman*, 84 Wash.2d 922, 530 P.2d 334 (S. Ct. 1975).

We find *Wolff* easily distinguishable. Parole rescission does not involve the lesser individual interests used in *Wolff* to justify affording lesser rights. In addition, the institutional concerns that troubled the Court in *Wolff* are not present in the rescission process. Here, Klinke received punishment for the prison rule infraction following a disciplinary committee hearing. Our decision need not affect such hearings. The rescission hearing is a separate hearing held before the Parole Board.

We also note that KMCI officials do not apparently share the *Wolff* Court's concern with allowing cross-examination of adverse witnesses and its attendant administrative burden. In *Wolff* the Court characterized confrontation and cross-examination of adverse witnesses at disciplinary hearings as having "potential for havoc," and noted that "(p)roceedings would . . . tend to unmanageability." 418 U.S. at 567. Klinke had been extended the right to cross-examine witnesses adversely at the formal disciplinary hearing which he waived. Thus the Parole Board here argues that less than *Wolff* rights should be afforded at rescission hearings, yet prison officials apparently disagree with one of the basic rationales for the *Wolff* decision by actually offering more than *Wolff* rights in disciplinary hearings where much less is at stake. These positions are inconsistent. We believe the application of *Morrissey-Gagnon* rights to the relatively infrequent rescission hearing will create much less of an administrative burden than the routine extension of the right of cross-examination of adverse witnesses at disciplinary hearings.

Our due process analysis in this case is in accord with the Wisconsin Supreme Court's due process analysis in

---

*Contra, Robinson v. Benson,* 570 F.2d 920 (10th Cir. 1978); *Sexton v. Wise,* 494 F.2d 1176 (5th Cir. 1974) (holding before *Wolff* that there are no due process requirements for rescinding paroles); *Jackson v. Wise,* 390 F. Supp. 19 (C.D. Cal. 1975).

*Steele v. Gray*, 64 Wis.2d 422, 219 N.W.2d 312, *modified* 223 N.W.2d 614 (1974). The court in *Steele* initially held that *Morrissey* standards applied to hearings involving possible revocation of good time of inmates in state institutions. After *Wolff*, and only because of *Wolff*, did the court modify its decision in *Steele* to find the lesser *Wolff* rights applicable. Also, in *State ex rel. Terry v. Schubert*, 74 Wis.2d 487, 247 N.W.2d 109 (1976), *vacated and remanded sub nom. Percy v. Terry*, 434 U.S. 808 (1977), *reinstated* 84 Wis.2d 693, 267 N.W.2d 380 (1978), the court applied *Morrissey* standards to periodic reexamination of commitments made under the Sex Crimes Act.

Finally, Klinke's case graphically illustrates the benefits which counsel can provide in assuring a proper rescission determination. In *Gagnon* the Court recognized that counsel should be a presumptive right where there is a timely and colorable claim of innocence. 411 U.S. at 790. Here, Klinke immediately and throughout the proceedings proclaimed his innocence of the "intoxication" charge. In addition, an attorney could have recognized and argued the defective waiver,[6] and the error in the disciplinary committee's finding of intoxication.[7]

---

[6] The disciplinary committee denied Klinke a formal hearing with its accompanying rights on the basis of a clearly inadequate waiver. No waiver can be knowing or voluntary where the accused is not informed or is misled as to the full range of consequences a finding of guilt entails. In addition, the waiver should have been clearer in explaining that Klinke was waiving all the rights listed on his notice of the charge, not solely the right to "demand a Formal Hearing."

[7] While in reaching our decision here we need not and are not asked to review the disciplinary committee's finding of intoxication, there is little question that it was legally defective. The mere fact of drinking is an insufficient basis for a finding of intoxication. Here, the evidence from the guard was that Klinke shared two glasses of an unidentified substance with two other men. There may also have been a due process violation

In *Gagnon* the Court additionally noted that "the responsible agency also should consider, especially in doubtful cases, whether the probationer appears to be capable of speaking effectively for himself." 411 U.S. at 790–91. Review of the transcript of the second rescission hearing reveals the difficulties Klinke had in effectively presenting his case. The transcript also reveals that the Parole Board improperly raised and discussed irrelevant matters at the second parole rescission hearing.[8] Certainly counsel would have been expected to object to consideration of irrelevant and damaging evidence. Finally, an attorney might also have been able to persuade the Board to take some action less drastic than rescission and the nine-month deferral of further parole consideration.[9]

We therefore hold that *Morrissey-Gagnon* due process protection is required before a parole, granted but not yet executed, may be rescinded. This protection extends to the determination of the factual basis for rescission and, where the factual basis is misconduct, this protection includes the opportunity to present to the Parole Board evidence in justification or mitigation of the misconduct which may make rescission inappropriate.

based on the disciplinary committee's inadequate investigation prior to finding Klinke guilty. *See Green v. Nelson,* 442 F. Supp. 1047 (D. Conn. 1977).

[8] Counsel stipulated to the trial court after the second hearing that the Parole Board had been instructed prior to the hearing that they were not to consider Klinke's conduct subsequent to the first hearing. The attention paid to the subsequent conduct at the second hearing indicates that the Parole Board ignored this instruction.

[9] Wisconsin has long recognized that rights, absent counsel, may be without substance. As stated in *Carpenter v. Dane County,* 9 Wis. 274, 276, 277 (1859), on the question of appointment of counsel for indigents for criminal proceedings;

And would it not be a little like mockery to secure to a pauper these solemn constitutional guaranties for a fair and full

We express no opinion on the specific procedures which the Board must employ to implement this decision, leaving this to the Board's discretion. We require only that the Board comply with the standards required by *Morrissey-Gagnon* before rescinding parole. The circuit court's order for release of Donald Klinke for failure of the Board to comply with the requirement for rehearing is affirmed.[10]

*By the Court.*—Order affirmed.

trial of the matters with which he was charged, and yet say to him when on trial, that he must employ his own counsel, who could alone render these guaranties of any real permanent value to him. . . . Why this great solicitude to secure him a fair trial if he cannot have the benefit of counsel?

Quoted by Mr. Justice Black with approval in his dissent in *Betts v. Brady*, 316 U.S. 455 (1942).

[10] Our decision in this case is based on federal constitutional grounds. Therefore, it was not necessary to consider whether the Wisconsin Constitution would provide a basis for the decision in the absence of federal constitutional requirements. *See State ex rel. Terry v. Schubert*, 84 Wis.2d 693, 267 N.W.2d 380 (1978).