STATE of Wisconsin EX REL. Kenneth MEEKS, Petitioner-Appellant,

v.

John R. GAGNON, Respondent.

Court of Appeals

*No. 79–406. Argued October 25, 1979.—Decided January 28, 1980.*
(Also reported in 289 N.W.2d 357.)

For the petitioner-appellant there were briefs by *Richard L. Cates*, state public defender, and *Elizabeth Alexander*, assistant state public defender, and oral argument by *Elizabeth Alexander*, assistant state public defender.

For the respondent there was a brief by *Bronson C. La Follette*, attorney general, and *Richard J. Boyd*, assistant attorney general, and oral argument by *Richard J. Boyd*, assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. Appellant Kenneth Meeks, an inmate in the Wisconsin State Prison at Waupun, has appealed from the order of the circuit court which affirmed the action of a prison disciplinary committee. The committee imposed a penalty of five days' adjustment segregation and recommended that Meeks be returned to maximum security for having fought with another inmate.

July 15, 1978 Meeks was charged with assault and fighting with Freddie Gee, in violation of the Division of Corrections Rules of Conduct.[1] A staff advocate prepared a report for the committee. The investigation made by the advocate included written statements by Meeks, Gee and prison officers and interviews by the advocate with Meeks, the officers and other inmates. The report states that none of the inmate witnesses wanted to be-

---

[1] Disciplinary Rule 2.07 provides: "Residents shall not engage or participate in any fight or physically violent encounter of any kind. A fight implies willing, aggressive participation by the parties or the utilization of more force than necessary to protect against an assault."

come involved, that many indicated that they saw the fight but most said that they did not see it start and that the rest claimed they knew nothing firsthand about it. The advocate concluded that the issues were whether Freddie Gee was the assailant and whether Meeks used more force than was necessary to protect himself from an assault.

The hearing was held July 21, 1978. The advocate and Meeks were the only witnesses although Meeks had requested the appearance of three inmate witnesses. The hearing record consists of a form worksheet, part of which requires the committee to list and summarize the evidence. The entries in this part are limited to the following: "See attached written report dated 7–21–78 from Staff Advocate Jerilynn Spencer" and Meeks' statement, "I bit Gee but didn't hit him. He attacked me first and I'm the person who rec'd the serious injuries." The worksheet contains space for the "reasons for the decision, including the evidence relied on." The entries in this part are limited to the following:

2.01—Assault—Not guilty
2.07—Fighting—Guilty
Report from infirmary dated 7–18–78
Letter from Gee to Mr. Winans regarding the incident
Meeks stated [sic] to Lt. Schultz dated 7–15–78
Lt. Schultz's Incident Report dated 7–15–78
Report from Officer Tierney dated 7–15–78
Both Gee and Meeks were injured

The worksheet space providing for the "Disposition and reasons for disposition" contains only the following entries: "5-days adjust. Seg.—We recommend he be seen by PRC and that he be returned to maximum security. 2.01—Assault—Not Guilty, 2.07—Fighting—Guilty."

The issues are:

1. Does the record contain credible evidence that appellant used more force than was necessary to repel an attack by another inmate?

2. Did the disciplinary committee adequately state the reasons for its decision?

3. Was appellant arbitrarily denied the testimony of relevant witnesses?

4. Did the disciplinary committee fail to provide an adequate investigation?

5. What is the appropriate remedy?

■

Appellant properly sought judicial review of the action of the disciplinary committee by way of certiorari. No statutory provision existed for judicial review of the actions of the committee when appellant sought review in the circuit court. The committee action is therefore reviewable by certiorari. *State ex rel. Johnson v. Cady,* 50 Wis.2d 540, 549–50, 185 N.W.2d 306 (1971); *State v. Goulette,* 65 Wis.2d 207, 212–15, 222 N.W.2d 622 (1974).

■

A reviewing court on certiorari is limited to determining whether the commission kept within its jurisdiction, whether it acted according to law, whether the action was arbitrary, oppressive or unreasonable and represented its will and not its judgment, and whether the evidence was such that it might reasonably make the order or determination in question. *Goulette,* 65 Wis. 2d 207, 215.

■

Judicial review as to whether the commission acted according to law includes the question whether due process of law was afforded. *State ex rel. Ball v. McPhee,* 6 Wis. 2d 190, 199, 94 N.W.2d 711 (1959). Judicial review also looks to whether the commission has followed its own rules governing the conduct of its hearings, for an agency is bound by the procedural regulations which it itself has promulgated. *Vitarelli v. Seaton,* 359 U.S. 535, 539–40 (1959).

If review is had on certiorari the court may not consider matters outside the record. *State ex rel. Conn v. Board of Trustees*, 44 Wis.2d 479, 482, 171 N.W.2d 418 (1969). Allegations in the petition cannot supply facts which do not appear in the record. *State ex rel. Grant School Dist. v. School Bd.*, 4 Wis.2d 499, 504, 91 N.W.2d 219 (1958). The return cannot be impeached by affidavits or other proof. *State ex rel. Ellis v. Thorne*, 112 Wis. 81, 89, 87 N.W. 797 (1901).

The hearing notice advised Meeks that if the committee found him guilty, he was subject to forfeiture of earned good time. Good time diminishes an inmate's sentence but may be forfeited for violation of a prison regulation and may not be restored after a forfeiture. Sec. 53.11(1) and (2), Stats. The record does not indicate whether petitioner had earned good time which he could have forfeited.

However, according to the advocate's report, petitioner had a MAP contract with a target parole date of April 29, 1979. The hearing notice stated that a finding of guilt could jeopardize rights under a MAP contract. MAP contracts and their enforceability are discussed in *Coleman v. Percy*, 86 Wis.2d 336, 272 N.W.2d 118 (Ct. App. 1978).[2] The purpose of a MAP contract is to inject a degree of definiteness into the discretionary parole system. According to the MAP manual, in exchange for a guaranteed parole release date, the inmate agrees to fulfill terms which he negotiates with prison officials. The agreement is enforceable in the sense that a decision by the officials adversely affecting the MAP parole date is judicially reviewable. Petitioner therefore risked loss of his specified parole date should the committee find him guilty of assault or fighting.

---

[2] Petition to review granted March 13, 1979.

*Wolff v. McDonnell*, 418 U.S. 539, 563 (1974), held that if a prisoner may lose good time as the result of a disciplinary hearing, the prisoner is entitled to certain minimum requirements of procedural due process, including "a written statement of the factfindings as to the evidence relied upon and the reasons for the disciplinary action taken."[3] The applicability of *Wolff* requirements to disciplinary hearings in Wisconsin was immediately recognized on rehearing in *Steele v. Gray*, 64 Wis. 2d 422, 431a, 219 N.W.2d 312, *reh.* 223 N.W.2d 614 (1974).

Loss of a specified and enforceable parole date under a MAP contract has much the same effect as loss of good time. A prisoner who may lose a specified release date under a MAP contract because of a disciplinary proceeding should therefore have the same procedural rights as he would have if faced with a potential loss of good time.

The hearing notice given to Meeks stated that an adverse decision could subject him to segregation and to isolation confinement of up to ten days. The Division of Corrections has adopted procedural rules for "due process

---

[3] *State ex rel. Klinke v. H&SS Department*, 87 Wis.2d 110, 117, 273 N.W.2d 379, 382 (1978), summarizes the *Wolff* rights for prisoners having prison disciplinary proceedings as follows:

(1) written notice of the alleged rule infraction;

(2) written statement as to the evidence relied upon and the reasons for the disciplinary action;

(3) opportunity to present witnesses and documentary evidence when permitting the inmate to do so would not be unduly hazardous to institutional safety or correctional goals;

(4) the assistance of a fellow inmate or other substitute-counsel, where an illiterate inmate is involved or where the complexity of the issues makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.

hearings" which may result in segregation or loss of good time. One procedural rule provides, "In all due process hearings, the hearing tribunal shall set forth briefly the facts relied upon in reaching its findings."

The circuit court concluded that the *Wolff* requirement of a written statement of evidence relied upon and reasons had been met. It held that the list of evidence relied upon provided an adequate basis for review and sufficiently showed the reasons for the committee's decision. The court did not determine whether the division's procedural rules had been followed. The court reviewed the listed items and concluded, primarily on the basis of Freddie Gee's statement, that there was evidence to support the committee's decision. According to Gee's statement, Meeks initiated the fight and cut Gee with a knife when Gee rushed Meeks. The court said that while the committee found petitioner not guilty of assault, it did not necessarily find him not guilty of fighting. The court concluded that the evidence could have led to findings that Meeks could have withdrawn from the fight but that he continued to fight when it was no longer necessary to defend himself. The court noted that Meeks and Freddie Gee made many conflicting statements but concluded that the committee resolved those statements and that the committee's decision could not be overturned on the ground that there was no evidence to support it.

■ The bare listing by the disciplinary committee of the reports and statements before it plus a statement that both petitioner and Freddie Gee were injured is insufficient to meet the procedural requirements of *Wolff* or to meet the division's own procedural rule.

■ *Hayes v. Walker*, 555 F.2d 625 (7th Cir. 1977), *cert. den.* 434 U.S. 959 (1977), held that a statement by a prison disciplinary committee that its decision was based

upon a written violation report and upon the report of a special investigator did not meet the requirements of *Wolff*. *Hayes* concluded that merely incorporating the reports "does not ensure that prison officials will act fairly. Nor will this finding protect against subsequent collateral effects based on misunderstanding of the initial decision." 555 F.2d 625, 633. The reference to collateral effects is based upon the following statement in *Wolff*, 418 U.S. 539, 565:

Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others.

The record made by the disciplinary committee may have a substantial effect upon the future of the inmate. *Wolff* specifically refers to review by other bodies, such as a parole board, of action taken by a disciplinary committee. 418 U.S. 539, 565. If Meeks loses his MAP parole date, the parole board when deciding whether to grant him a purely discretionary parole might read only the statement of Freddie Gee. The parole board could conclude from that statement that Meeks attacked Gee, that Gee rushed Meeks to defend himself, that Meeks then pulled a knife and cut Gee, that Gee knocked the knife out of petitioner's hand and fought back with the knife, and that Meeks bit Gee's left hand and "tried [to] pull the meat right off" and subsequently "spit some of my flesh out [of] his mouth." Gee's description is hardly consistent with the infirmary report which the parole board might not read. The infirmary report states that

the day after the fight Gee was examined and complained of an abrasion to the palm of his left hand. The report makes no reference to Gee's having been cut. The board might not read a report by a prison officer who stated that the night of the incident he checked Gee for marks resulting from the fight and found none and that Gee said he was not hurt. Meeks, on the other hand, required suturing to close wounds to his face, neck and upper left arm.

The parole board would have to sift the entire record, as did the trial court, if the board wanted to find a basis for the committee's decision. It was one thing for the trial court to conclude, as it could and did, that the committee's decision could be supported by the evidence. It is quite another for a future parole board to be forced to speculate as to whether Meeks did start the fight and, if he did not, whether he exercised more force than was necessary or whether he withdrew when he could have done so. The parole board or other body which may take action partly in reliance upon the decision of the disciplinary committee must not be compelled to guess as to the facts relied upon and the reasons for the decision of the committee. Sufficiency of the record for judicial review meets only half of the purpose of the *Wolff* requirement. The other half protects the prisoner from future "collateral consequences based on a misunderstanding of the nature of the original proceeding." 418 U.S. 539, 565.

In addition to failing to meet the minimum due process requirement of *Wolff*, the mere listing of reports relied upon did not meet the division's procedural rule that the hearing tribunal shall set forth briefly the facts relied upon in reaching its findings.

One important reason for requiring an agency to set forth written reasons for its decision is to force the administrator to go through the decision-making process:

to pick and choose among conflicting facts, to reach a result based on the facts so found, and to articulate that process in writing. Decision-making is difficult and may be unconsciously avoided unless it must be done in a fixed way. The act of assembling and enunciating reasons in writing forces the act of reasoning and prevents its opposite, arbitrariness.

Simple reference to the record as the basis for a decision may hide a failure to make the decision. As noted in *Edmonds v. Board of Fire & Police Commrs.*, 66 Wis.2d 337, 348, 224 N.W.2d 575, 581 (1975), if administrators "have to state the factual basis for a decision that may be subject to close scrutiny in subsequent judicial proceedings, they are bound to take more care in arriving at their determination."

A prison disciplinary committee need not produce lengthy or detailed findings of fact. Disciplinary hearings generally do not involve the complexities dealt with by other administrative agencies, are not subject to the same evidentiary considerations and must be handled with a speed seldom necessary in other areas. If, however, the issue is whether the inmate, for example, exercised more force than was necessary in repelling an attack, as was the case here, then an express statement is necessary as to why the issue was resolved in a certain way by stating the facts which the committee used as the basis for its decision. Enough must be said to tell a future reader, such as a parole board member, what the problem was and why it was decided as it was.

We turn to the claim by Meeks that the committee failed adequately to investigate the incident. *State ex rel. Klinke v. H&SS Department*, 87 Wis.2d 110, 120–21, n. 7, 273 N.W.2d 379 (1978), noted a possible due process violation in that case based upon the disciplinary committee's inadequate investigation prior to finding an inmate guilty on charges, citing *Green v. Nelson*, 442

F. Supp 1047 (D. Conn. 1977). *Klinke* involved a parole rescission proceeding. *Klinke* expressly notes that its holding does not affect disciplinary hearings. 87 Wis. 2d 110, 119, 273 N.W.2d 379, 383.

Nevertheless, some investigation is necessary before a disciplinary committee can make a factual determination sufficient to meet the minimum due process requirements laid down by *Wolff*. It is impossible to state the facts relied upon without having discovered the facts. If some investigation is necessary, then the reasonableness of that investigation may be an issue.

Provision for an investigation is implicit in a rule of the division which provides that a resident accused of a rule infraction which may result in segregation and a loss of good time is entitled to the assistance of a staff advocate. The advocate assigned to Meeks made an investigation which resulted in a report consisting of slightly more than one page of single-spaced typing. The scope of the investigation has been previously described. The investigation appears from the face of the report to have been adequate.

Meeks argues that the investigation was inadequate because the advocate failed to interview a named individual who voluntarily came to the staff and stated that Gee "was the man that had assaulted Meeks," and that "he had saw [sic] the assault on the rec field." We cannot conclude that further questioning of the informer was crucial or required by due process. The advocate's report states that she interviewed several residents whom Meeks felt could verify his contention that Gee was the aggressor, some of whom, by implication, also saw the incident from the start. Failure to interview every witness to a prison fight seen by many does not deny due process.

Meeks contends that he was arbitrarily denied the testimony of relevant witnesses. He requested that

three named inmates testify at the hearing. Meeks stated in his request that two of the inmates were present when Meeks was cut and that the third inmate told Meeks before the fight that Freddie Gee wanted to see Meeks alone. The advocate's report states that the third inmate confirmed that Gee told him to tell Meeks that Gee wanted to see Meeks. As the report was submitted to the committee, live testimony to establish that point was unnecessary. The report states that the advocate interviewed the other two inmates. The contents of those interviews are not stated but we infer from the context of the report that the two inmates were among those who did not want "to become involved."

One of the minimum procedural rights guaranteed by *Wolff* to an inmate in a disciplinary proceeding is to call witnesses in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." 418 U.S., 539, 566. In *Hayes v. Walker, supra,* the disciplinary committee justified its refusal to hear the evidence of witnesses the prisoner desired to call on grounds that they would be subject to possible retribution from other residents. *Hayes* held that the committee's conclusory finding of possible hazard did not permit even a limited review of the committee's exercise of discretion, and that while it was not necessary that a statement of reasons be given to support the denial of a request for witnesses, "some support for the denial of a request for witnesses [must] appear in the record." 555 F.2d 625, 630.

The record discloses no support for the committee's refusal to call or obtain written statements from the two inmates whom Meeks wanted to testify. Meeks was badly cut in the fight, and if the two inmates were to be called solely for that reason, their testimony was un-

necessary. A critical issue before the committee, however, was whether Meeks exercised unreasonable force to defend himself. The testimony of the two inmates could have been important in resolving that issue. Failure to state why the committee did not call the witnesses or obtain their written statements was therefore error in the absence of evidence supporting the refusal to grant Meeks' request.

We have not ignored the possibility that the disciplinary committee, with its knowledge of prison life, may have read the advocate's statement that the two witnesses did not want "to become involved" as code for fear of likely reprisal. If each individual feared reprisal, however, then that reason and the view of the committee as to whether the asserted reason had basis should have been stated by the committee. A court cannot review the reasonableness of a committee's refusal to call a witness unless the court knows why the decision was made.

The last issue is the remedy which should be afforded to Meeks because he was denied the minimum procedural rights guaranteed by *Wolff* and by the rules of the division.

Meeks takes the position that outright reversal is necessary because he lost his MAP contract parole date of April 29, 1979. We know from the notice of hearing that an adverse decision could jeopardize his MAP contract but we do not know whether he in fact lost that parole date and, if he did, whether the loss resulted from this or some other incident. Reversal therefore is not justified on this ground.

Meeks relies upon *Snajder v. State,* 74 Wis.2d 303, 246 N.W.2d 665 (1976), as additional support for outright reversal. *Snajder* held that because due process requires that the facts necessary for a valid parole revocation must be established at a single proceeding, a

remand to permit the department to take additional evidence, other than newly discovered evidence, would be improper. *Snajder* nevertheless remanded a parole revocation proceeding for a determination by the department as to whether a single parole violation found to exist was sufficient to warrant revocation.

As the committee erred for the reasons previously stated, we need not determine the sufficiency of the evidence on the present record. Remand to permit Meeks to take the evidence of the two additional witnesses or for an explanation by the committee as to why it again refuses to call those witnesses does not involve a shoring-up of deficient findings by the committee. It grants to the petitioner the right either to call the witnesses or to have an explanation as to why they are not called. Whether this is possible in view of the lapse of time we do not know. If a witness is still available but is not required to testify, we would expect the committee to state the reason. If a witness is not now available, then appellant has been prejudiced by the fault of the committee, and we would therefore expect the committee to vacate its findings against appellant. If both witnesses are available and testify or provide written statements, we would expect the committee to consider that evidence and to render its decision in accordance with the *Wolff* requirements and in compliance with its own rules.

*By the Court.*—The order of the circuit court is reversed and vacated. The matter is remanded with instructions to vacate the decision and penalty of the disciplinary committee and to direct that the hearing be opened to take testimony of the two witnesses requested by Meeks and for further proceedings consistent with this opinion.