STATE of Wisconsin EX REL. Leon IRBY,
Petitioner-Appellant,

v.

Thomas ISRAEL, Respondent.

Court of Appeals

*No. 79–332. Submitted on briefs November 2, 1979.—
Decided March 26, 1980.*
(Also reported in 291 N.W.2d 643.)

---

For the petitioner-appellant the cause was submitted on the briefs or *Richard L. Cates,* state public defender, and *Elizabeth Alexander,* assistant state public defender.

For the respondent the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Steven D. Ebert,* assistant attorney general.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. Appellant Leon Irby, an inmate in the Wisconsin State Prison at Waupun, has appealed from the order and judgment of the circuit court which affirmed the action of a prison disciplinary committee. The committee imposed a penalty of three days' adjustment segregation and a return to program segregation.

The issues are:

1. Was appellant unconstitutionally denied the testimony of a relevant witness?

2. Was appellant unconstitutionally denied the right to introduce relevant documentary evidence?

3. Did the disciplinary committee adequately state the reasons for its decision?

4. Was appellant's conduct report arbitrarily classified as a major rather than a minor disciplinary offense?

5. What is the appropriate remedy?

Irby sought review on certiorari. The record on return discloses that Irby was charged with violation of three Division of Corrections Rules of Conduct: violation of a direct order, unauthorized possession of property and unauthorized transfer of property.[1] Irby was in adjustment segregation at the time of the alleged violations. According to the report of the complaining officer, inmate Munoz passed a pack of cigarettes to Irby through the bars of Irby's cell for transfer by Irby to another prisoner in a cell down the line and Irby did not comply with the officer's order to give the pack to the officer.

Irby was given a written notice which warned that should he be found guilty, he would be subject to penalties involving adjustment confinement not to exceed eight days, segregation from the general population of the institution, forfeiture of part or all of earned good time and loss of rights granted under a MAP contract.[2] The notice stated that Irby had the right to demand a "formal hearing" and that if he made that demand, he had the right to a staff advocate, to request the presence of material eyewitnesses to testify on his behalf, to cross-examine, through the committee, the complainant, and

---

[1] The disciplinary rules provide:

1.03 *Orders.* Residents shall immediately acknowledge receipt of and follow any direct orders, either verbal or written, addressed to them by staff members.

3.04 *Unauthorized Possession.* Residents shall not have in their possession, on their person, in their living quarters or under their control, any unauthorized property.

3.06 *Unauthorized Transfers of Property.* Residents shall not give, buy, sell, barter, exchange, lend, borrow or accept from anyone any property without authorization.

[2] *See Coleman v. Percy,* 86 Wis.2d 336, 272 N.W.2d 118 (Ct. App. 1978), for a description of the MAP program.

to appeal the decision of the committee to the warden. Irby demanded a formal due process hearing and requested the testimony of three eyewitnesses: the prisoner who passed the cigarette package to Irby, another officer who was in the area at the time of the report and another individual whose name is illegibly written.

According to the disciplinary hearing record worksheet, the complaining officer stated that Munoz passed the cigarettes to Irby, the officer gave Irby a direct order to surrender the cigarettes at that time which Irby refused to do, and the officer was then requested to find out whether passing was allowed. According to Irby, he made the request to find out whether passing was allowed and the officer left for that purpose and returned and then gave Irby the direct order, by which time Irby had already passed on the cigarettes. The question whether passing was permitted arose out of a recent change in the prison regulations regarding unauthorized transfers between inmates. A copy of the "Waupun World Special" which purports to contain a statement of new passing rules was put in evidence. That rule provides that residents may pass minor property from cell to cell but not in the adjustment center. Irby stated that there was a memorandum by the prison security officer which states a rule different from that in the record. That memorandum was not put in evidence.

The officer witness was initially present at the hearing, at the request of the defendant, but did not testify. The notations in the hearing worksheet are ambiguous but indicate that the officer left the hearing to take a telephone call and did not return.

Irby's advocate at the hearing stated that Irby's action was done openly, questioned why charges against others, including a single charge against Munoz, had been dismissed, and referred to the memorandum Irby believes exists. Irby contends that the memorandum sup-

ports his position that transferring cigarettes was in fact allowed in adjustment segregation under the new rule.

The disciplinary committee found Irby guilty of each charge. Under the section of the worksheet requiring a narrative decision on the issue of guilt and reasons for the decision, is the entry "Guilty of 1.03 order—3.06 Unauth. Transfer—3.04 Unauth. Poss." The committee gave no reason for imposing the penalty of three days' adjustment segregation and return to program segregation.

An "Institutional Complaint Investigator's Report" was made following Irby's written complaint regarding the procedures followed in his hearing. Irby complained that the officer witness, whose testimony he requested, was not present at his hearing and that a prison publication, the "Waupun World Special," rather than a copy of the new regulation on transfers between prisoners, was admitted in evidence.

The investigator states that the officer was present at the hearing but left to make a phone call and that inmates are entitled to call eyewitnesses but all witnesses must appear voluntarily. The investigator recommended that Irby's complaint be dismissed: "Since officer did not appear voluntarily and there is no evidence that anyone connected to staff of this institution denied complainant this witness, . . . ." The warden affirmed the investigator's recommendation. Irby appealed to the corrections complaint examiner who recommended dismissal of the complaint. The administrator, acting on that recommendation, dismissed the complaint.

A. *Scope Of Review*

We recently noted in *State ex rel. Meeks v. Gagnon*, 95 Wis.2d 115, 289 N.W.2d 357 (Ct. App. 1980), that judicial review of the action of a prison disciplinary com-

mittee is properly sought by certiorari. Review on certiorari is limited to whether the commission kept within its jurisdiction and acted according to law, whether the action was arbitrary, oppressive or unreasonable and represented the commission's will and not its judgment, and whether the evidence was such that the commission might reasonably make the order or determination in question. *Meeks, supra.* A reviewing court on certiorari may not consider matters outside the record on return to the writ. Allegations in the petition cannot add facts which are not in the record. *Meeks, supra.*

B. *Right To Testimony Of Eyewitness*

*Wolff v. McDonnell,* 418 U.S. 539, 563 (1974), held that a prisoner who may lose good time as the result of a disciplinary hearing is entitled to certain minimum requirements of procedural due process. Those requirements include an opportunity to present witnesses and documentary evidence when permitting the inmate to do so would not be unduly hazardous to institutional safety or correctional goals, and a written statement as to the evidence relied upon and the reasons for the disciplinary action. 418 U.S. at 566.

The record contains no evidence that Irby had good time credits or a MAP contract which could be lost or jeopardized, either of which factors would entitle him under *Meeks* to the minimum requirements of procedural due process enunciated in *Wolff.*

*Wolff* did not directly involve the question whether minimum requirements for procedural due process must be observed if adjustment confinement is a possible penalty. However, the Supreme Court acknowledged in *Wolff* that the minimum requirements apply where the penalty may be a major change in the conditions of confinement, as well as the possible loss of good time. The Court stated that it would be difficult for the purposes of procedural due process to distinguish between the pro-

cedures required where good time is forfeited and those that must be extended when solitary confinement is at issue.

The latter represents a major change in the conditions of confinement and is normally imposed only when it is claimed and proved that there has been a major act of misconduct. Here, as in the case of good time, there should be minimum procedural safeguards as a hedge against arbitrary determination of the factual predicate for imposition of the sanction. We do not suggest, however, that the procedures required by today's decision for the deprivation of good time would also be required for the imposition of lesser penalties such as the loss of privileges. 418 U.S. at 571, n. 19.

Irby faced a possible penalty of adjustment confinement not to exceed eight days. This is a major change in the condition of confinement and gives rise to the minimum procedural due process requirements established by *Wolff*.

*Meeks* also dealt with the right of an inmate in a disciplinary hearing to call witnesses. *Meeks* held that while it was not necessary that a statement of reasons be given to support the denial of a request for witnesses, "some support for the denial of a request for witnesses [must] appear in the record." 95 Wis.2d at 127, 289 N.W. 2d at 365, quoting *Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977), *cert. den.* 434 U.S. 959 (1977). Support for that denial must be founded upon hazard to institutional safety or correctional goals. *Wolff*, 418 U.S. at 566.

Failure by the committee to make the officer's testimony available denied Irby his right to call the witness. We find no support in the record for the committee's failure to call the guard as a witness, or to delay the

hearing in order to obtain his testimony or to obtain his written statement for submission to the committee. There is not the slightest suggestion that institutional safety or correctional goals would be adversely affected if the officer was compelled to testify or that the officer feared retribution. In the absence of that type of support for denying the inmate the testimony of a witness, the committee must make the witness available.

The officer whose testimony was requested by Irby may have established Irby's defense. Irby's request refers to the officer as an "eyewitness." The testimony of that officer may have sustained Irby's position that the order which he was accused of disobeying was given when he could no longer comply with it. That testimony could also have gone to the degree of disrespect for authority or impertinence exhibited by Irby and therefore to the appropriate sanction.

We conclude that Irby was denied his right to call witnesses in his defense. The decision of the prison disciplinary committee must be vacated for that reason.

C. *Denial Of Right To Present Documentary Evidence*

The "Waupun World Special" was introduced to show that the adjustment center was excluded from the liberalization of the rules on passing property between inmates. It is impossible to determine on this record whether the memorandum Irby's advocate referred to at the hearing and described on brief in fact exists. We cannot even determine from the record whether Irby or his advocate demanded that the memorandum be obtained and be put in evidence. There is nothing in the investigator's report or the complaint examiner's report which indicates that the memorandum exists. The "Waupun World Special" appears to set forth verbatim the new passing rules and there is nothing in the record from which we can determine the status of the memorandum

claimed to exist. We are bound by the record on certiorari. *Meeks*, 95 Wis.2d at 120.

We therefore cannot determine whether, under these circumstances, Irby was denied his due process right to present documentary evidence.

### D. *Failure To State Reasons For Decision*

The hearing record is devoid of a statement of the evidence relied on by the disciplinary committee for its finding that Irby was guilty of violating rule 1.03. The evidence as to that violation is in dispute.[3] While we perhaps could infer that the committee found that the order to hand over the cigarettes was given before Irby had passed on the cigarettes, there is no finding to that effect. Such a finding would be critical to a conclusion that Irby violated that rule. The committee failed to state why Irby was given three days' segregation and program segregation as the penalty for his infractions.

*Wolff* requires a statement of the reasons for the particular penalty imposed, as well as a statement of the evidence relied upon for the conclusion that a rule has been violated. *Craig v. Franke*, 478 F. Supp. 19, 21 (E.D. Wis. 1979), remanded a disciplinary matter to the committee for a statement of the reasons for imposing three days of adjustment segregation where the committee failed to do so on the record, in reliance upon the *Wolff* requirements as applied in *Hayes v. Walker, supra.*

As the disciplinary committee did not state what portion of the disputed evidence it relied upon and the rea-

---

[3] Assuming that no relaxation of rules 3.04 and 3.06 has occurred as to inmates in segregation, Irby does not dispute the evidence that he has violated those rules. The committee need not make a statement of the evidence relied upon where that evidence is undisputed. *Craig v. Franke*, 478 F. Supp. 19, 21 (E.D. Wis. 1979).

sons for the penalty imposed, the action of the committee must be vacated for those additional reasons.

E. *Proper Classification As Major Rather Than Minor Offense*

Appellant contends that his conduct report was arbitrarily classified by prison staff as major rather than minor, which improperly subjected him to potentially greater penalties.

The report of a corrections complaint examiner states that classifications have not been consistently made and recommends the promulgation of guidelines. Munoz, who passed the cigarettes to Irby, was given a single charge of unspecified minor misconduct, and that fact is cited as evidence of arbitrariness in classifying the charge against Irby. The record shows that, whatever the charge against Munoz, he was not charged with disobeying a direct order. The charge against Munoz was dismissed.

The warden concluded on review of the examiner's recommendation that Irby's conduct report charged a "multi-rule violation of major rules."

The Manual of Resident Status Rules and Penalties provides in relevant part:

To warrant imposition of a major penalty, the misconduct must meet one of the following criteria:
a. It creates a danger of harm to persons or property;
b. It demonstrates a flagrant disrespect for authority;
c. It seriously disrupts the routine of the institution;
d. It is a repeated (more than twice) infraction of one or more institution rules which resulted in imposition of a minor penalty.

These criteria are facially reasonable and have not been shown to be unreasonable. Violation of a direct order constitutes a flagrant disrespect for authority, especially where part of a multi-rule violation. The impact upon prison discipline of the alleged conduct in light of the

criteria is the sort of discretionary evaluation which generally must be left to correction personnel. We will honor that evaluation in the absence of clear evidence that discretion has been abused. The disparity in treatment between Munoz, who was accused of violating a single rule, and Irby is irrelevant.

We find no arbitrariness in the classification of the report as major misconduct.

F. *Remedy On Remand*

The matter must be remanded to the disciplinary committee to take the evidence of the officer who was an eyewitness to the incident but who did not testify. In view of the lapse of time, it may be that the witness is no longer available. If that is the case, then appellant will have been prejudiced by the fault of the committee and the committee should vacate its findings against Irby. If the witness is available and testifies or provides a written statement, we would expect that the committee will consider that evidence and render its decision in compliance with the *Wolff* requirements, setting forth the evidence relied on and the reasons for whatever penalty is imposed.

*By the Court.*—The order and judgment of the circuit court are reversed and vacated. The matter is remanded with instructions to the court to vacate the decision and penalty of the disciplinary committee and to direct that the hearing be opened to take the testimony of the witness requested by Irby and for further proceedings consistent with this opinion.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

GARTZKE, P.J. *(On reconsideration)* We have reconsidered our mandate at appellant's request because

we cannot determine from the record whether appellant was denied his due process right to present documentary evidence. Due process in a parole hearing requires a record sufficient for judicial review. *State v. Goulette,* 65 Wis.2d 207, 216, 222 N.W.2d 622 (1974). The same principle applies to a disciplinary hearing record, for a reviewing court must be able to determine from that record whether the minimum requirements for procedural due process have been met. *Compare State ex rel. Meeks v. Gagnon,* 95 Wis.2d 115, 289 N.W.2d 357 (Ct. App. 1980) (remand to take evidence from witnesses requested by the prisoner in a disciplinary hearing or for an explanation on the record as to why that evidence was not taken).

*By the Court.*—The order and judgment of the circuit court are reversed and vacated. The matter is remanded with instructions to the court to vacate the decision and penalty of the disciplinary committee and to direct that the hearing be reopened to take the testimony of the witnesses requested by Irby and for a finding on the record as to whether the memorandum his advocate referred to at the hearing exists, and, if it does exist, to make it part of the record, and for further proceedings on that record consistent with this opinion.