114 F.3d 1191
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ira Lee ANDERSON-EL, II, Plaintiff-Appellant,
v.
Oscar SHADE, Defendant-Appellee.
 No. 96-1577.
 United States Court of Appeals, Seventh Circuit.
 Submitted April 30, 1997.*
Decided May 1, 1997.
 
 Before FAIRCHILD, BAUER and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Ira Lee Anderson-El brought this suit under 42 U.S.C. § 1983, asserting two claims which arose during his incarceration in Wisconsin in 1991. He claimed, first, that the defendant violated Wisconsin Department of Corrections ("WDOC") procedures during Anderson-El's prison disciplinary hearing, and second, that the parole commission violated his federal constitutional right to due process by using a prison disciplinary board's finding to rescind his previously granted parole.[1] The district court granted the defendant's motion to dismiss, and we affirm.
 
 
 2
 In 1991, Anderson-El was a prisoner in the St. John's Correctional Center in Wsiconsin. On September 17, 1991, he received a letter from the parole commission, recommending that he be granted parole. The letter specifically informed Anderson-El that "[f]inal action on this recommendation must be taken by the Parole Commission Chairman. It may or may not be approved." (emphasis added). On September 23, 1991, the commission formally granted parole to Anderson-El, effective on September 30, 1991, subject to the condition that Anderson-El be released only to a structured halfway house. Anderson-El was then placed on a waiting list for a halfway house.
 
 
 3
 However, on November 4, 1991--before there was an opening in a halfway house, and hence, before he was released on parole--Anderson-El received a disciplinary report for using intoxicants and violating institution policies and regulations. On November 20, 1991, he received a disciplinary hearing, which found against him and sentenced him to segregation. Moreover, as the defendant asserts, Anderson-El "was removed from the waiting list for the halfway house, since the condition for his parole release could not be met, and [Anderson-El's] parole grant was rescinded prior to his going into parole status." The defendant does not, however, explain what "condition" for parole release Anderson-El could not meet, nor does he identify any statutory basis for his recision of Anderson-El's previously granted parole based on a prison disciplinary finding.[2]
 
 
 4
 Anderson-El appealed the disciplinary committee's finding, but his appeal was denied. Six months later, on May 18, 1992, Anderson-El was released on parole.
 
 
 5
 In March 1994, Anderson-El filed this suit under 42 U.S.C. § 1983, alleging two separate claims related to the recision of his parole. He alleged, first, that the procedures used at his prison disciplinary hearing violated WDOC policies, and second, that the recision of his grant of parole without a hearing violated his federal constitutional right to due process under Morrissey v. Brewer, 408 U.S. 471 (1972).
 
 
 6
 At the outset, we reject Anderson-El's claim insofar as it relates to procedural deficiencies in his disciplinary hearing. Anderson-El alleges only that the procedures followed at his hearing violated certain policies or regulations of the WDOC.[3] But § 1983 provides a remedy only for the deprivation of rights secured by the federal Constitution or laws. 42 U.S.C. § 1983; see White v. Olig, 56 F.3d 817, 821 (7th Cir.1995). None of the procedural faults Anderson-El identifies in his hearing violated any federally protected right. Accordingly, the district court properly dismissed his claim insofar as it relates to his disciplinary hearing.[4]
 
 
 7
 We turn now to Anderson-El's claim that the parole commission improperly rescinded his grant of parole without affording him the due process mandated by Morrissey. The defendant argues that because Anderson-El had not actually been released from prison pursuant to his parole, he had no vested liberty interest in his previously issued grant of parole, and hence, he was not entitled to any process before his grant of parole was rescinded. Whether a prisoner's liberty interest in his parole status vests when he is granted parole--or whether it vests only when he is actually released from prison--is an open question in this circuit. We note, however, that other courts are divided on this issue. See Green v. McCall, 822 F.2d 284 (2d Cir.1987) (liberty interest vests when parole is granted); Jackson v. Wise, 390 F.Supp. 19 (C.D.Cal.1974) (same); Batchelder v. Kenton, 383 F.Supp. 299 (C.D.Cal.1974) (same). But see McIntosh v. Woodward, 514 F.2d 95 (5th Cir.1975) (liberty interest vests only upon actual release from prison); Sexton v. Wise, 494 F.2d 1176 (5th Cir.1974) (same).[5]
 
 
 8
 Nonetheless, we need not resolve this issue now. Although the parole commission had actually granted Anderson-El's parole prior to his disciplinary hearing, the only evidence he submitted to the district court was the letter of September 17, stating that he had been recommended for parole. As we noted above, the letter was highly tentative, and indicated that the recommendation might not be approved. Given the uncertainty of this recommendation, the district court held on the authority of Jago v. Van Curen, 454 U.S. 14, 21 (1981) (per curiam), that Anderson-El had no vested liberty interest in his parole, and hence, that he was not due any process before having the recommendation rescinded. See also Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex, 442 U.S. 1 (1979).
 
 
 9
 Admittedly, Anderson-El did include in his "Motion for Discovery" sixteen documents to be included in the record. One of the documents--the fifteenth--was the letter dated September 23, 1991 from the parole commission to the warden at Anderson-El's prison, informing the warden that Anderson-El's parole formally had been granted. Nonetheless, Anderson-El never brought that document to the court's attention. Rather, his complaint stated that "On 9-17-91, I was given a grant of parole." Similarly, Anderson-El's "Response to Defendant's Motion to Dismiss" included the recommendation of September 17 as an exhibit, and erroneously referred to it as a "grant of parole." At no point did Anderson-El ever refer to the actual parole grant on September 23.[6] Thus, in rendering its decision, the district court relied on Anderson-El's representations that he had received only the recommendation for parole, and not the final grant.
 
 
 10
 It is a litigant's responsibility to muster the facts and law which support his position, and to bring them to the court's attention; the court need not scour the record seeking support for a litigant's position. Little v. Cox's Supermarkets, 71 F.3d 637, 641 (7th Cir.1995). Here, Anderson-El failed to direct the court to the key piece of evidence in support of his claim: the fact that his parole had actually been granted--as opposed to being merely recommended--prior to its recision. In our review of the district court's decision, we may look only to the facts and arguments Anderson-El proffered to that court. Henn v. National Geographic Soc'y, 819 F.2d 824, 831 (7th Cir.), cert. denied, 484 U.S. 964 (1987); Hill v. Trustees of Indiana University, 537 F.2d 248, 251 n. 2 (7th Cir.1976). Thus, we may consider Anderson-El's claim only insofar as it is supported by his September 17 recommendation for parole.
 
 
 11
 Under Jago, 454 U.S. at 21, we hold that the highly tentative parole recommendation Anderson-El received on September 17 did not create a vested liberty interest. Accordingly, no process was due under Morrissey before the parole commission revoked that recommendation. Thus, Anderson-El's § 1983 claim must fail, and the district court properly dismissed Anderson-El's suit.
 
 
 12
 AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary in this case; accordingly, the appeal is submitted on the briefs and the record. See Fed.R.App.P. 34(a); Cir.R. 34(f)
 
 
 [1]
 Oscar Shade, the defendant in this suit, is the warden of the prison in which Anderson-El was confined in 1991. Anderson-El's complaint listed numerous defendants without explaining what role each one played in his alleged constitutional deprivation. The district court dismissed without prejudice all the defendants other than Shade, stating that it would allow Anderson-El to join them later if the evidence so warranted. Because Shade elected to defend the suit on the merits rather than by arguing that he lacked any personal involvement in Anderson-El's alleged deprivations, and because the district court decided the case on that basis, we too shall reach the merits of Anderson-El's claims without discussing Shade's personal involvement in those claims
 
 
 [2]
 Presumably, the "condition" Anderson-El could not meet was that he be released only to a halfway house. Nonetheless, the defendant does not explain--nor does he provide any statutory basis for--his assertion that Anderson-El's disciplinary violation prevented him from being released to a halfway house
 
 
 [3]
 Anderson-El alleged in his complaint that two prison guards wrote his conduct report, whereas WDOC regulations stipulate that only one staff member may write a report for a single incident; that the first conduct report was replaced by a superseding conduct report, whereas WDOC regulations state that there should be only one conduct report for each violation; that his hearing was held fifteen days after he was suspended from his work release program, whereas WDOC regulations require the hearing to be held within fourteen days; that the hearing officer was a staff member of another prison, whereas WDOC regulations require the hearing officer to be a staff member of the prison in which the violation occurred; and finally, that his appeal was not decided in a timely fashion, as required by WDOC regulations
 
 
 [4]
 Moreover, we note that under Heck v. Humphrey,
 [T]o recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.
 
 
 [114]
 S.Ct. 2364, 2372 (1994). We have extended Heck to § 1983 suits challenging prison disciplinary hearings. Miller v. Indiana Dep't of Corrections, 75 F.3d 330 (7th Cir.1996). Anderson-El makes no claim that the result of his prison disciplinary has ever been reversed, expunged or declared invalid, and thus, he has no claim under § 1983. Nonetheless, the defendants did not raise any defense based on Heck, and so we will treat the issue as waived
 
 
 [5]
 Anderson-El contends that State ex rel. Klinke v. Wisconsin Dep't of Health and Soc. Servs., 273 N.W.2d 379 (Wis.Ct.App.1978), which holds that a prisoner's liberty interest in parole vests when his parole is granted, controls this court. But state court precedent--although persuasive--is not binding on this court on matters of federal constitutional law. RAR, Inc. v. Turner Diesel, Ltd., No. 96-2280, slip op. at 4-5 (7th Cir. March 3, 1997)
 
 
 [6]
 The first time Anderson-El ever directed the court's attention to the actual grant of parole on September 23 was in his "Plaintiff's Appeal to Magistrate's Decision to Dismiss," filed after the magistrate judge--who was hearing the case pursuant to the consent of both parties--had granted the defendant's motion to dismiss. But by then, the case had already been dismissed, and his belated argument had no effect