STATE of Wisconsin EX REL. Spencer MCCLAIN,
Petitioner-Appellant,

v.

Marianne A. COOKE, Respondent-Respondent.

Court of Appeals

*No. 96–2403. Submitted on briefs April 10, 1997.—Decided
May 28, 1997.*

(Also reported in 565 N.W.2d 303.)

For the petitioner-appellant the cause was submitted on the brief of Spencer McClain, *pro se*.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Stephen J. Nicks*, assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

SNYDER, P.J. Spencer McClain is an inmate at Kettle Moraine Correctional Institution (KMCI). He appeals pro se from a trial court order which affirmed the decision of a hearing officer finding him guilty of possessing intoxicants contrary to WIS. ADM. CODE § DO C 303.59 (use of intoxicants).[1] McClain contends that this finding is in error because he was tested twice within thirty days for the presence of intoxicants contrary to institution rules. We conclude that McClain is correct; the institution did not follow its own internal management procedures relating to random drug testing and consequently McClain's second test was improper. We therefore reverse the circuit court's order and remand the cause to the disciplinary committee, requiring the committee to expunge from McClain's record all references to the conduct report and to

---

[1] Under DOC rules, "use of intoxicants" is defined as "[a]ny inmate who intentionally takes into his or her body any intoxicating substance, except prescription medication in accordance with the prescription . . . ." *See* WIS. ADM. CODE § DO C 303.59.

correct any changes to his prison status that may have resulted from that report.[2]

The facts are straightforward. On November 29, 1995, McClain was randomly selected for urinalysis testing in accordance with Department of Corrections (DOC) policy. That test of McClain's urine was positive for the presence of THC (marijuana). As is permitted, he requested a second, confirmatory test. In the interim, he was issued a conduct report. However, Mc Clain's urine sample was inadvertently returned untested to KMCI and rendered useless for further testing due to the failure to freeze and preserve the sample. Consequently, the confirmatory test was not completed, and the conduct report was dismissed.

On December 12, 1995, McClain was required to submit to another urinalysis. The reason given for this urinalysis was "random drug testing." This second analysis tested positive for the presence of THC; the confirmatory test was also positive. A second conduct report was issued and McClain was found guilty. He received a disposition of eight days of adjustment segregation, 180 days of program segregation and six months of no-contact visits.

The trial court, viewing the action of the hearing examiner under the certiorari standard, concluded that the hearing officer acted according to law, but vitiated the 180 days of program segregation as being contrary to DOC policy. McClain appeals.

---

[2] The court's order also concluded that McClain should not have been subject to both adjustment segregation and program segregation time, as program segregation was not appropriate under DOC policy for a second offense. *See* DOC 306, I.M.P. #5 (effective 5/1/90).

■ On certiorari review, we determine de novo whether the DOC acted within its jurisdiction, whether it acted according to applicable law, whether the action was arbitrary or unreasonable, and whether the evidence supported the determination in question. *See State ex rel. Riley v. DHSS,* 151 Wis. 2d 618, 623, 445 N.W.2d 693, 694 (Ct. App. 1989). An important component of the analysis is whether the DOC followed its own rules because " 'an agency is bound by the procedural regulations which it itself has promulgated.' " *Id.* at 623, 445 N.W.2d at 694–95 (quoted source omitted). This component is dispositive in this appeal.

According to WIS. ADM. CODE § DOC 306.16(5), a body contents search may only be conducted under one of the following conditions and must have the approval of the superintendent or a designee: (a) if a staff member has observed, or has reliable sources that indicate, that a particular inmate has used, possesses or is under the influence of intoxicants; (b) upon intake, as part of the assessment and evaluation process; (c) after an inmate returns from a visit, furlough or other release off-grounds; or (d) as part of a random testing program. The parties agree that both the original test conducted on McClain and the test at issue here were denominated by the DOC as part of the "random testing program." *See* WIS. ADM. CODE § DOC 306.16(5)(d).

In addition to the above, the DOC has promulgated directives or Internal Management Procedures which outline "the procedures to be followed by each facility in the administration of the Urinalysis Testing Program." *See* DOC 306, I.M.P. #4 (effective 7/1/94). Under the "PROCEDURE" section it states:

1. Reasons for Testing

. . . .

f. As part of a random Urinalysis Testing Program conducted on the entire population of the facility. Each institution shall have a procedure for defining random selection. The procedure should be computerized and approved by DO C central office.

. . . .

h. Retesting may be made for positive cannabinoids test 30 days from the date of taking the original urine collection.

McClain concedes that the original test was part of a random drug test that he was rightfully subject to as an inmate. He argues, however, that after the original test, the DOC was precluded by its own rules from conducting a second test for thirty days. We agree. Under the plain language of the procedural rules, Mc Clain was subjected to "retesting" after a positive cannabinoids test. McClain's selection for the first urinalysis was part of the random drug testing conducted by KMCI. The decision to test him again after the confirmatory test could not be completed, and the conduct report was dismissed, was a retesting. The DOC's own rules protect an inmate from a non-random rescreening unless thirty days have elapsed. Therefore, the second test was improperly performed.

In justification of its actions, the DOC argues that while its rules subject it to a three-week testing limitation in DOC 306, I.M.P. #5, this three-week limitation is not applicable because it is included in a

section which assumes that penalties were imposed as a result of the positive test.[3] Because the first random test did not result in the imposition of any discipline, the DOC maintains that this section and its time limits are not applicable to McClain.

We agree with the DOC that the three-week testing limitation in DOC 306, I.M.P. #5 is not applicable to McClain under these facts. However, that argument does not respond to our analysis that another time limitation found in DOC 306, I.M.P. #4 is applicable. In that section, the DOC's own rules unambiguously disallow an additional test for thirty days after a positive test for THC. That rule makes no mention of whether discipline was imposed as a result of the earlier test. Under the guidelines of DOC 306, I.M.P. #4, the second test on December 12, 1995, was improper.

The second issue raised by McClain, that the imposition of program segregation time as a penalty was in error, is conceded by the DOC. In light of our determination that the conduct report must be dismissed, this issue is moot. *See City of Racine v. J-T Enters. of Am., Inc.,* 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974).

---

[3] The requirement the DOC points to is included in a section entitled "RANDOM URINALYSIS TESTING - PENALTIES." The text of the pertinent part of this section is as follows:

A. Maximum and Medium Security Institutions - THC

1. First Offense: A positive urinalysis supports a charge of the violation of HSS 303.59, Use of Intoxicants, which is always a major offense [HSS 303.68(3)]. On a first offense, a penalty of not more than three days Adjustment Segregation will be imposed upon the finding of guilt. *The inmate may be re-tested in three weeks.* [Emphasis added.]

We reverse the order of the circuit court and remand the matter to the disciplinary committee, directing it to expunge any reference in McClain's prison record to the conduct report which was issued as a result of the December 12, 1995 drug screening, and to correct any changes to McClain's prison status that may have resulted from the issuance of that report.

*By the Court.*—Order reversed.