Paul A. WEIMER, Plaintiff-Appellant-Petitioner,

v.

COUNTRY MUTUAL INSURANCE COMPANY, Defendant-Respondent-Petitioner,

TRACELAND LANDSCAPE, DESIGN CONSTRUCTION COMPANY, Ronald E. Trace, United States Fidelity & Guaranty Company, Dynaweld Trailer Company, Royal Insurance Company of America, General Motors Corporation, Wisconsin Physicians Service Insurance Corporation, BBB Insurance Company, General Casualty Company of Illinois, Frederick R. Ross, Eugene Sheets, George Meyer and Keith Jurkowski, Defendants.

Supreme Court

*No. 96–1440. Oral argument January 6, 1998.—Decided March 20, 1998.*

(Also reported in 575 N.W.2d 466.)

705

For the plaintiff-appellant-petitioner there were briefs by *Larry B. Brueggeman, Hope K. Olson* and *Previant, Goldberg, Uelmen, Gratz, Miller & Brueggeman, S.C.*, Milwaukee and oral argument by *Larry B. Brueggeman*.

For the defendant-respondent-petitioner there were briefs by *James J. Jacobson, Robert M. Piette* and *Piette & Jacobson,* Milwaukee and oral argument by *James J. Jacobson*.

¶ 1. N. PATRICK CROOKS, J. Plaintiff Paul A. Weimer (Weimer) and Defendant Country Mutual Insurance Company (Country Mutual) separately petition this court for review of a published decision of the court of appeals[1] affirming in part and reversing in part the judgment of the circuit court. The Jefferson County Circuit Court, Honorable William F. Hue presiding, concluded that Weimer cannot "stack"[2] two separate Country Mutual insurance policies insuring

---

[1] *Weimer v. Country Mut. Ins. Co.*, 211 Wis. 2d 845, 565 N.W.2d 595 (Ct. App. 1997).

[2] "Stacking refers to a situation where an insured attempts to collect reimbursement for the same loss under multiple policies." *Carrington v. St. Paul Fire & Marine Ins.*, 169 Wis. 2d 211, 223, 485 N.W.2d 267 (1992) (citing *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 159 n.1, 361 N.W.2d 673 (1985)).

two separate vehicles where both vehicles are involved in the same accident. Citing *Agnew v. American Family Mut. Ins. Co.*, 150 Wis. 2d 341, 441 N.W.2d 222 (1989), the circuit court determined that Wis. Stat. § 631.43(1) (1993–94)[3] does not void the "other insurance" provisions[4] of the insurance policies that limit Country Mutual's liability, because the two separate policies do not insure against the "same loss." It is the court of appeals' affirmation of this issue from which Weimer appeals.

¶ 2. The circuit court also determined that Country Mutual "tendered" the limits of its liability to Weimer by letters dated October 3, 1990, and February 4, 1991. The circuit court therefore concluded that pursuant to language in the insurance policies, which relieves Country Mutual of liability for interest on the entire judgment if it tenders its policy limits, Country Mutual is liable to pay interest only on its policy limits of $100,000 from the date of the verdict until the date Country Mutual satisfies the judgment. The court of appeals reversed the circuit court on this issue, holding Country Mutual did not tender the limits of its liability

---

[3] All future references to the Wisconsin Statutes will be to the 1993–94 volumes unless otherwise noted.

Wisconsin Stat. § 631.43(1) states in relevant part:

> When 2 or more policies promise to indemnify an insured against the same loss, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions.

[4] An "other insurance" provision in an insurance policy "limit[s] the insurer's liability if other collectible insurance exists." John H. Mathias, Jr. et al, *Insurance Coverage Disputes*, § 8.02 at 8–9 (1997).

and is consequently liable for interest on the entire judgment pursuant to the terms of the insurance policies. It is the court of appeals' reversal of this issue from which Country Mutual appeals.

¶ 3. We conclude that the two separate Country Mutual policies for the two insured vehicles involved in the accident do not insure against the "same loss" because the dump truck and the trailer do not present the same risks. Therefore Wis. Stat. § 631.43(1) does not void the provisions of the insurance policies limiting Country Mutual's liability to $100,000.[5] We further conclude that Country Mutual tendered its policy limits to Weimer by letters dated October 3, 1990, and February 4, 1991. Accordingly, Country Mutual has no liability for post-judgment interest.

I.

¶ 4. The relevant facts are not in dispute. Weimer suffered bodily injury as a result of a motor vehicle

---

[5] We point out that effective July 15, 1995, Wis. Stat. § 631.43(3) was amended by 1995 Wisconsin Act 21, § 1 to provide additional exceptions to Wis. Stat. § 631.43(1). One such exception was created by 1995 Wis. Act 21, § 4 in Wis. Stat. § 632.32(5)(f):

A policy may provide that regardless of the number of policies involved, vehicles involved, persons covered, claims made, vehicles or premiums shown on the policy or premiums paid the limits for any coverage under the policy may not be added to the limits for similar coverage applying to other motor vehicles to determine the limit of insurance coverage available for bodily injury or death suffered by a person in any one accident.

If the language of Wis. Stat. § 631.43 (1995–96) were applicable in the present case, it would not void the provisions of the insurance policies limiting Country Mutual's liability to $100,000 for bodily injury, regardless of whether the separate policies covered the "same loss."

accident which occurred on April 20, 1990. Ronald Trace (Trace), who was driving a dump truck with an attached trailer, crossed over the center line of a highway and collided with the vehicle driven by Weimer. On April 16, 1992, Weimer commenced an action against several parties, including Trace and Country Mutual as the insurer of the dump truck and trailer.

¶ 5. Country Mutual insures the dump truck and the trailer under a business automobile policy. The declarations page of the insurance policy lists the dump truck and the trailer as owned vehicles of Trace, in addition to five other vehicles. Trace pays a separate premium for insurance coverage for each of the seven vehicles insured. The declarations page also provides that the liability limits for bodily injury are $100,000 for each person and $300,000 for each accident.

¶ 6. On October 3, 1990, Country Mutual forwarded a letter to Weimer offering its policy limits of $100,000 in full settlement of his claim against Country Mutual and its insured, Trace. In a letter dated October 4, 1990, Weimer rejected Country Mutual's offer, indicating that the potential negligence of other defendants was being evaluated. Country Mutual sent a second letter to Weimer on February 4, 1991, acknowledging Weimer's rejection of its offer and stating that Country Mutual's offer of its policy limits of $100,000 in full settlement was still in effect.

¶ 7. On June 21, 1995, Country Mutual brought a motion for declaratory judgment that its limit of liability for Weimer's bodily injury was $100,000.[6] On

---

[6] The relevant language of the insurance policies issued to Weimer by Country Mutual states:

OTHER INSURANCE:

. . .

October 10, 1995, the circuit court granted Country Mutual's motion, concluding that the policy insuring the dump truck and the policy insuring the trailer do not insure against the same loss. Therefore, the circuit court reasoned, Wis. Stat. § 631.43 is inapplicable, and the provisions of the insurance policies limiting liability for bodily injury to $100,000 per person are valid and enforceable.

¶ 8. A jury trial commenced on October 2, 1995. A special verdict was returned on October 18, 1995, wherein the jury found Trace 75 percent causally negligent and Weimer 25 percent causally negligent. The jury awarded Weimer total damages of $813,805.50. In an order dated March 7, 1996, the circuit court granted judgment on the verdict against Trace and Country Mutual in the amount of $610,354.35. The circuit court affirmed its non-final order for declaratory judgment

2. When two or more policies cover on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the limit of our policy bears to the total of the limits of all the policies covering on the same basis.

OUR LIMIT OF LIABILITY:

1. Regardless of the number of covered autos, insureds, claims made or vehicles involved in the accident, our limit of liability is as follows:

 a. The most we will pay for all damages resulting from bodily injury to any one person caused by any one accident is the limit of Bodily Injury Liability shown in the declarations for "Each Person."

 b. Subject to the limit of Each Person the most we will pay for all damages resulting from bodily injury caused by any one accident is the limit of Bodily Injury Liability shown in the declarations for "Each Accident."

The declarations page states that the limit of bodily injury liability is $100,000 for each person and $300,00 for each accident.

and found Country Mutual liable to Weimer for its policy limits of $100,000 "together with taxable costs and interest as allowed by law."

¶ 9. At the request of the parties, a hearing was held on March 14, 1996, to clarify the March 7 order with respect to the interest payable by Country Mutual in accordance with the language of the insurance policy.[7] Weimer argued that Country Mutual was liable for the interest on the entire judgment, not limited to Country Mutual's policy limits. Weimer asserted that Country Mutual's act of forwarding letters offering its limits of liability did not constitute "tender" and therefore Country Mutual is not relieved of its obligation to pay interest on the entire judgment per the policy. Country Mutual, on the other hand, asserted that because its written offers to pay its liability limits did constitute "tender" it was not liable for any interest on any portion of the judgment, including its policy limits. The circuit court held that Country Mutual was liable only for the interest on its policy limits of $100,000 from the date of the verdict until the $100,000 was paid to Weimer. Weimer appealed.

¶ 10. In a split decision, the court of appeals affirmed in part and reversed in part the judgment of the circuit court. The court of appeals affirmed that portion of the circuit court's decision limiting Country Mutual's liability for damages to $100,000. The court of appeals concluded that the insurance policies covering

---

[7] The supplemental payments clause of Country Mutual's insurance policy issued to Trace states, in relevant part:

In addition to our limit of liability, we will pay for the insured:

. . .

5. All interest accruing after the entry of the judgment in a suit we defend. Our duty to pay interest ends when we pay or tender our limits of liability.

the dump truck and the trailer do not insure against the same loss. As such, Wis. Stat. § 631.43(1) does not void the provisions of the insurance policies limiting Country Mutual's liability to $100,000 for Weimer's bodily injury.

¶ 11. The court of appeals reversed that portion of the circuit court's decision holding that Country Mutual is liable only for post-verdict interest on $100,000. The court of appeals determined that Country Mutual did not tender its policy limits. Based upon the language of the insurance policies, therefore, the court of appeals concluded Country Mutual is liable to pay interest on the entire amount of the judgment until it pays its policy limits to Weimer.

## II.

█

¶ 12. Weimer asserts that Wis. Stat. § 631.43(1) voids the language of the insurance policies limiting Country Mutual's liability to $100,000 for Weimer's bodily injury. "The construction of insurance contract provisions and statutes are questions of law which this court reviews *de novo*." *West Bend Mut. Ins. Co. v. Playman*, 171 Wis. 2d 37, 40, 489 N.W.2d 915 (1992) (citing *Martin v. Milwaukee Mut. Ins. Co.*, 146 Wis. 2d 759, 766, 433 N.W.2d 1 (1988)).

¶ 13. The relevant language of Wis. Stat. § 631.43(1) states that where "*2 or more policies. . .*indemnify an insured against the *same loss*, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured." (Emphasis supplied.) Hence, we must discern whether two policies exist in the present case and, if so, whether they insure Trace against the same loss.

¶ 14. The declarations page of the policy issued by Country Mutual indicates that Trace has only one policy number covering the seven insured vehicles. However, Trace pays a separate premium for each of the seven insured vehicles, including the dump truck and the trailer involved in the accident. Payment of separate premiums is the equivalent of having separately issued policies. *See Burns v. Milwaukee Mut. Ins. Co.*, 121 Wis. 2d 574, 578, 360 N.W.2d 61 (Ct. App. 1984) (quoting *Citizens Mut. Ins. Co. v. Turner*, 220 N.W.2d 203, 204–05 (Mich. Ct. App. 1974)); *Schult v. Rural Mut. Ins. Co.*, 195 Wis. 2d 231, 237, 536 N.W.2d 135 (Ct. App. 1995). "[W]here a single insurance contract incorporates indemnity coverage for two vehicles, charging separate unit premiums, the insurer has issued two policies within the meaning of sec. 631.43, Stats." *Krause v. Massachusetts Bay Ins. Co.*, 161 Wis. 2d 711, 715, 468 N.W.2d 755 (Ct. App. 1991) (citing *Burns*, 121 Wis. 2d at 576–79). Thus where one policy covers two or more vehicles, Wis. Stat. § 631.43(1) voids insurance provisions that limit liability for the same loss "when more than one *premium* has been paid." *Schult*, 195 Wis. 2d at 240 (emphasis supplied). Trace therefore has two insurance policies—one for the dump truck and one for the trailer—in accordance with the relevant language of § 631.43.

¶ 15. Having concluded that there are two separate insurance policies covering the dump truck and the trailer, we must consider whether those policies insure Trace against the "same loss." Weimer argues that the premium paid for the dump truck and the premium paid for the trailer separately insure Trace against the damages for bodily injury resulting from the April 20, 1990, accident. Both vehicles were

involved in the accident and were operated in tandem to cause one bodily injury; therefore, both policies insured against the same loss, Weimer contends. Country Mutual, on the other hand, argues that the policies do not insure Trace against the same loss because the dump truck presents one type of risk and the trailer presents another type of risk. Country Mutual contends that although both vehicles were involved in the accident, each vehicle is insured against distinct losses; therefore, the policies do not insure against the same loss. We conclude, as did the circuit court and the court of appeals, that the policies covering the dump truck and the trailer do not insure Trace against the "same loss."

¶ 16. In affirming the judgment of the circuit court, the court of appeals relied upon this court's decision in *Agnew*, 150 Wis. 2d 341, wherein we discussed the application of Wis. Stat. § 631.43(1) to an insured's multiple insurance policies with the same insurer. Our decision in *Agnew* was not based upon the consideration of an "other insurance" provision in an insurance policy as is presented here. *See id.* at 344. However, our interpretation of what constitutes coverage for the "same loss" is applicable to the present case.

¶ 17. In *Agnew* the insured had three separate policies of insurance on three separate vehicles. Each of the three policies contained a "drive-other-car" provision which stated that coverage does not apply to bodily injury arising out of the use of a vehicle other than the insured vehicle. Each policy also contained an "other insurance" provision which limited the insurer's liability to $25,000 for bodily injury to each person regardless of the number of insured vehicles involved in the accident. The plaintiff was injured in an accident involving one of the insured's vehicles and sought to

716

stack or aggregate the insurance policies covering each of the insured's three vehicles.

¶ 18. We concluded in *Agnew* that a determination whether two policies insure against the same loss must be made on a case-by-case basis.[8] *See id.* at 349 (quoting *Wood v. American Family Mut. Ins. Co.*, 148 Wis. 2d 639, 651, 436 N.W.2d 594 (1989), *overruled on other grounds, Matthiesen v. Continental Cas. Co.*, 193 Wis. 2d 192, 202, 532 N.W.2d 729 (1995)). In holding that Wis. Stat. § 631.43(1) did not void the "drive-other-car" provisions of the policies in that instance, we determined that while the three policies did indemnify the insured against a loss, they did not indemnify the insured against the same loss. *See Agnew*, 150 Wis. 2d at 349.

¶ 19. Separate policies insure against the same loss if "the *risk of injury* that [one] policy covers does not increase with the number of policies that have been issued to cover *that person or property*." *Id.* at 349 (emphasis supplied). *See also*, 7 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3D*, § 101:3 at 101–11 (1997) (" '[T]he risk' can be understood as the type of loss which the insurer agrees to compensate."). The three policies at issue in *Agnew* did not provide "multiple protections against the same risk" because the three policies each covered separate vehicles and therefore insured against different losses. *Agnew*, 150 Wis. 2d at 349.

---

[8] In holding that a case-by-case analysis is required, we recognized that "the applicability of sec. 631.43(1) does not turn on the distinction between liability and indemnity insurance contracts." *Agnew v. American Fam. Mut. Ins. Co.*, 150 Wis. 2d 341, 348, 441 N.W.2d 222 (1989).

> [E]ach policy insures against a different loss and only one policy insures the insured against the loss incurred. Each [insurance] policy insures against liability arising from the operation of the vehicle specified in the policy owned by the policyholder. Thus under this part of each policy in this case only the policy covering the [vehicle involved in the accident] covered liability incurred by reason of operation of [that vehicle].

*Id.*

¶ 20. The fact that only one of the insured's vehicles was involved in the accident in *Agnew* does not alter our analysis. In the present case, the Country Mutual policies do not insure Trace against the same loss because the risks accompanying the dump truck are not the same as the risks accompanying the trailer. Hence, our analysis of the application of Wis. Stat. § 631.43(1) hinges upon whether the separate insurance policies insure a particular vehicle against the same risk, not whether the particular injury resulting from the accident involved two insured vehicles.

¶ 21. Although both vehicles were involved in the accident in present case, there are numerous instances in which losses may occur where the vehicles are operated independently. For example, the dump truck may often be driven without the trailer, or any trailer, being attached. Any loss incurred in an accident resulting from the negligent operation of the dump truck in such an instance would not be covered by the Country Mutual policy insuring the trailer. Similarly, there are instances where the trailer presents risks independent of the dump truck. For example, the trailer may be negligently parked, resulting in bodily injury to an individual whose vehicle comes in contact with the trailer. Such injury would not be covered by the policy

insuring the dump truck. Moreover, there are instances where each vehicle presents independent risks even where the two vehicles are being operated in tandem. If the dump truck is pulling the trailer, it is possible that the trailer could break free and cause injury. In that instance, the policy insuring the dump truck would not cover the injury caused by the trailer. Thus the risks that accompany the dump truck are not the same risks that accompany the trailer.

¶ 22. Country Mutual argues that permitting Trace to recover the limits of liability under both policies would allow him to obtain increased unpurchased liability insurance. It is evident from reviewing the listed premiums on the declarations page of the insurance policy that the policies do not insure against the same loss, and that the limits of liability clause was apparently taken into consideration in setting premiums for coverage. The risk assumed by an insurer is the "type of loss which the insurer agrees to compensate." Russ & Segalla § 101:3, at 101–11. Therefore, it would seem likely that if one insurer is providing coverage under two policies covering the same loss or risk and establishing the same limits of liability, the amount of the premiums would be the same or similar. Here, however, the annual premium for the policy insuring the dump truck is almost 13 times more than the annual premium for the policy insuring the trailer.[9]

¶ 23. Weimer argues that a determination that the policies do not cover the same loss would be inconsistent with the reasonable expectation of an insured that each vehicle is separately insured for the full

[9] The total annual premium for the dump truck was $771.20, and the total annual premium for the trailer was $60.30.

$100,000 policy limits. We agree with Weimer to the extent that "the law of contracts attempts the realization of reasonable expectations" of the parties at the time they entered into the insurance policy. John H. Mathias, Jr. et al., *Insurance Coverage Disputes*, § 7.01 at 7–3 (1997). If possible, however, this reasonable expectation should be inferred "solely from the language of the contract itself." *Id.*

¶ 24. Weimer accurately cites language from the insurance policies which states that Country Mutual "will pay all sums the insured legally must pay as damages because of bodily injury. . .to which this insurance applies." However, this language must be analyzed in conjunction with the provisions in the policies stating that "[r]egardless of the number of covered. . .vehicles involved in the accident, our limit of liability is. . .the limit of Bodily Injury Liability shown in the declarations for 'Each Person.' " The unambiguous language of the insurance policy, read in its entirety, evinces that the "other insurance" provision in the policy would put a reasonable insured on notice that coverage is limited when multiple insured vehicles are involved in one accident.

¶ 25. In sum, we conclude that the insurance policies issued by Country Mutual do not insure Trace against the same loss because the risks accompanying the dump truck are distinct from the risks accompanying the trailer. This determination is consistent with what a reasonable insured would expect from the language of the policy as read in its entirety.

## III.

■

¶ 26. Country Mutual asserts that pursuant to the relevant provisions in the insurance policies, it is not liable to pay any interest on the judgment because it "tendered" the limits of its liability. The interpretation of language in an insurance policy is governed by "general principles of contract construction." *Kuhn v. Allstate Ins. Co.*, 193 Wis. 2d 50, 60, 532 N.W.2d 124 (1995) (citing *Lambert v. Wrensch*, 135 Wis. 2d 105, 115, 399 N.W.2d 369 (1987)). The construction of a written contract is generally a question of law; therefore, our interpretation of the insurance policy provision at issue is reviewed *de novo. See Lambert*, 135 Wis. 2d at 115.

¶ 27. Our determination whether Country Mutual is liable for interest on the judgment is made in consideration of the specific language used in the provisions of the insurance policies. *See McPhee v. American Motorists Ins. Co.*, 57 Wis. 2d 669, 672–73, 205 N.W.2d 152 (1973). The relevant portion of the supplemental payments clauses in the insurance policies states that Country Mutual will pay for "[a]ll interest accruing after the entry of the judgment;" however, the "duty to pay interest ends" when Country Mutual "tender[s] [its] limits of liability."

¶ 28. We first consider the language of the policies stating that Country Mutual will pay "[a]ll interest." This court has previously determined that "[t]he phrase 'all interest' does not connote the thought of some interest, or part of the interest on the judgment, but rather all interest on the judgment, whatever its amount in relation to the policy limits." *Id.* at 677 (citations omitted). Thus the insurance policies would impose liability on Country Mutual to pay

post-judgment interest on the entire amount of the judgment, not limited to its $100,000 policy limits, if Country Mutual did not tender its policy limits.

¶ 29. Having determined Country Mutual is potentially liable for interest on the entire judgment, we next consider whether Country Mutual has "tendered" its policy limits, thereby relieving it of liability for such interest. Country Mutual argues that the letters sent to Weimer offering its policy limits of $100,000 in full settlement of all claims against Country Mutual and its insured constituted "tender" thereby releasing Country Mutual of any obligation to pay interest. In contrast, Weimer argues that the letters offering the policy limits do not meet the common legal meaning of "tender" because the offer was not unconditional and the money was never placed outside the control of Country Mutual. Therefore, he asserts, the language of the policies provides that Country Mutual is liable for interest on the entire judgment.

¶ 30. When interpreting language in an insurance contract, we must give the terms used in the policy their " 'common and ordinary meaning which they have in the minds of the average lay[person].' " *Kremers-Urban v. American Employers Ins. Co.*, 119 Wis. 2d 722, 741, 351 N.W.2d 156 (1984) (citation omitted). "The language of an insurance policy should be interpreted to mean what a reasonable person in the position of the insured would have understood the words to mean." *Kuhn v. Allstate Ins. Co.*, 193 Wis. 2d 50, 60, 532 N.W.2d 124 (1995).

¶ 31. In the present case, the court of appeals correctly stated that a court may find guidance in construing the common meaning of an insurance policy term by looking to a definition of the term in a recog-

nized dictionary. *See Holsum Food v. Home Ins. Co.*, 162 Wis. 2d 563, 568–69, 469 N.W.2d 918 (Ct. App. 1991). Having said this, however, the court of appeals proceeded to cite language from Black's Law Dictionary to support the well-known legal construction of the word "tender."

¶ 32. Since our goal is to determine the ordinary, common meaning of a word as understood by a reasonable insured, guidance is more appropriately sought in a non-legal dictionary. *See id* at 569 (citing Webster's Third New International Dictionary to define term in an insurance policy); *Just v. Land Reclamation, Ltd.*, 155 Wis. 2d 737, 745, 456 N.W.2d 570 (1990) (same). The American Heritage Dictionary of the English Language 1849 (3d ed. 1992), defines "tender" as:

> **1.** A formal offer, as: **a.** *Law.* An offer of money or service in payment of an obligation. . . .**2.** Something, especially money, offered in payment. . . .To offer formally: *tender a letter of resignation.* See Synonyms at **offer**.

*See also* Webster's Third New International Dictionary, unabridged, 2355 (1981) (defining tender as "a proffer of money. . .in satisfaction of an obligation or condition arising from a relationship between parties").

■

¶ 33. Based upon the dictionary definition of the word "tender," we conclude the letters from Country Mutual constituted tender of its policy limits. The offer was formal in the sense that it was presented to Weimer in writing and signed by counsel for Country Mutual. Furthermore, offer of payment was extended in accordance with Country Mutual's obligations under the insurance policies. Because the letters constitute tender of Country Mutual's policy limits, Country

Mutual is not liable to pay any post-judgment interest in accordance with the terms of the insurance policy.

¶ 34. The language of the letters offering payment of Country Mutual's policy limits upon release of itself *and its insured* does not constitute a conditional provision that would negate our determination that Country Mutual tendered its policy limits. Such language requiring release of an insured for settlement is an integral part of Country Mutual's duty to defend Trace. Thus "Wisconsin cases indicate that an insurance company has more than a passive role—that is, in some circumstances at least, it has an affirmative duty to seize whatever reasonable opportunity may present itself to protect its insured from excess liability." *Alt v. American Family Mut. Ins. Co.*, 71 Wis. 2d 340, 350, 237 N.W.2d 706 (1976). *See also* Arnold P. Anderson, *Wisconsin Insurance Law* § 8.2, at 237 (3d ed. 1990) ("An insurance company has a duty to. . .do all that is reasonably necessary to protect its insured from any liability in excess of policy limits."). Failure to include language requesting release of Trace may subject Country Mutual to a claim of bad faith. *See Alt*, 71 Wis. 2d at 350.

¶ 35. Moreover, our interpretation of the term "tender" is not altered by this court's decision in *Estreen v. Bluhm*, 79 Wis. 2d 142, 255 N.W.2d 473 (1977). The court of appeals relied upon language in *Estreen* to support its determination that tender of money occurs only where the offeror relinquishes control and places the money beyond its own use. We are not persuaded that our decision in *Estreen* is applicable to this case because the facts and law presented in *Estreen* are distinguishable.

¶ 36. *Estreen* involved an action for specific performance of land contracts. In *Estreen*, this court

recognized that the real estate transaction was equitable in nature, and therefore "[t]he allowance of interest. . .is a matter within the discretion of the court." *Id.* at 156 (citation omitted). *Estreen* did not involve the interpretation of the term "tender" in an insurance policy provision. Moreover, the facts in *Estreen* are distinct because in that case, the offeror merely stated at the closing conference that the funds were "available and ready to be paid." *Id.* at 157.

¶ 37. Accordingly, we conclude that Country Mutual tendered its policy limits thereby relieving it of liability to pay any post-judgment interest pursuant to the provisions in the insurance policy.[10]

## IV.

¶ 38. We conclude that Wis. Stat. § 631.43(1) does not void the "other insurance" provisions of Country Mutual's insurance policies because the policy covering the dump truck and the policy covering the trailer do not insure against the "same loss." Therefore, under the provisions of the insurance policies, Country Mutual's liability for Weimer's bodily injury resulting from the accident at issue is limited to $100,000. We further conclude that Country Mutual tendered its liability limits by letters dated October 3, 1990, and February 4, 1991, offering $100,000 in full settlement of all claims against Country Mutual and its insured. As such, Country Mutual is not liable for any interest accruing after entry of the judgment.

[10] We recognize that other courts have apparently reached a contrary conclusion in interpreting whether an insurer has tendered its policy limits. *See, e.g., Knippen v. Glens Falls Ins. Co.*, 564 F.2d 525 (D.C. Cir. 1977); *Petry v. Richard*, 532 So. 2d 286 ( Ct. App. La. 1988). We do not find these decisions persuasive and are not bound by their authority.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part.

¶ 39. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE (*dissenting*). I dissent because I conclude that Wis. Stat. § 631.43(1) (1993–94) permits the plaintiff to stack the liability policy for the defendant-insured's truck and the liability policy for the defendant-insured's trailer when both are driven together and cause bodily injury.

¶ 40. Wis. Stat. § 631.43(1) provides that stacking is permitted when an insured has two or more insurance policies protecting against the same loss. *See Agnew v. American Family Mut. Ins. Co.*, 150 Wis. 2d 341, 349, 441 N.W.2d 222 (1989). The question presented is whether the two liability policies fall within the statutory phrase "the same loss."

¶ 41. The majority opinion concludes that stacking is not permitted because the liability policies for the truck and the trailer do not insure against the "same loss," that is, the same risk of loss. According to the majority opinion, the risks accompanying the truck are distinct from the risks accompanying the trailer. *See* Majority op. at 718, 720.

¶ 42. Under the majority opinion, the truck by itself is insured for $100,000/$300,000; the trailer by itself is insured for $100,000/$300,000; but when the truck and trailer are used together, the defendant-insured's coverage is limited to $100,000/$300,000.

¶ 43. I disagree with the majority opinion. In my view, the majority opinion's reasoning runs counter to common sense and to the "same loss" language set forth in Wis. Stat. § 631.43(1). As Judge Dykman stated in his dissent in the court of appeals, "[M]ost people would

726

conclude that the time when liability coverage on a trailer is most needed is when it is being pulled by one's motor vehicle." *Weimer v. County Mut. Ins. Co.*, 211 Wis. 2d 845, 868 (Ct. App. 1997) (Dykman, J., dissenting).

¶ 44. In this case the defendant-insured paid separate premiums for liability coverage for the truck and for the trailer. Each policy insured against liability for bodily injury arising from the operation of the vehicle specified in the policy owned by the defendant-insured. In light of the two separate liability policies, the defendant-insured and the insurer could presumably foresee that the trailer would sometimes be hitched to the truck. Because both vehicles were being operated at the time of the accident and both vehicles caused bodily injury, I conclude that each policy insured against the same loss and stacking is permitted.

¶ 45. Furthermore, the majority opinion's reliance on *Agnew* to support its interpretation of the "same loss" language is misplaced. In *Agnew* the plaintiff attempted to stack separate liability limits of three vehicles, but only one vehicle was involved in the accident. The *Agnew* court held that each policy insured against a different loss (namely the loss caused by each car) and that only one policy insured the insured against the loss incurred. *See Agnew*, 150 Wis. 2d at 349. Because only one policy promised to indemnify the insured against the loss incurred, the court concluded that Wis. Stat. § 631.43(1) did not apply. *See Agnew*, 150 Wis. 2d at 351. In the case at bar, in contrast to the *Agnew* case, both of the defendant-insured's vehicles were involved in the accident.

¶ 46. If stacking had been permitted in *Agnew*, the insured would have obtained increased unpurchased liability coverage for operation of the car

involved in the accident. The court stated, "It does not make sense to conclude that the legislature intended sec. 631.43(1) to allow the insured in this case to aggregate the three policies to provide insurance protection that the policyholder did not purchase." *Agnew*, 150 Wis. 2d at 350–51.

¶ 47. The case at bar is very different. In this case the policyholder purchased separate insurance for the operation of each vehicle. Both insured vehicles were involved in causing the bodily injury. I conclude that in this case both policies insured against the same loss and that Wis. Stat. § 631.43(1) permits stacking the two liability policies.

¶ 48. For the foregoing reasons, I dissent.

¶ 49. I am authorized to state that Justice William A. Bablitch joins this opinion.