STATE EX REL. Roland RILEY, Petitioner-
Appellant,

v.

DEPARTMENT OF HEALTH & SOCIAL SER-
VICES, and Warren Young, Superintendent, Waupun
Correctional Institution, Respondents.

Court of Appeals

*No. 88–1388. Submitted on briefs February 6, 1989.—Decided
July 13, 1989.*

(Also reported in 445 N.W.2d 693.)

■■■■

■■■■

■■■■

For the petitioner-appellant the cause was submitted on the brief of Roland Riley, *pro se.*

For the respondents the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *George B. Schwahn,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J. Roland Riley appeals from a decision and an order denying his petition for a writ of certiorari and upholding a decision of the Waupun Correctional Institution Program Review Committee (PRC) placing him in administrative confinement on suspicion that he was involved in gang-related activities at the prison. One issue is dispositive: whether the committee exceeded its authority when it relied upon unsworn statements from prison informants as a basis for holding Riley in administrative confinement. We conclude that the committee exceeded its authority and we remand the matter to the trial court with instructions to order that all records of the administrative confinement be expunged and any resulting change in Riley's status be reversed.[1]

---

[1] Riley also challenges the propriety of the temporary lockup procedure (TLU) which proceeded his administrative confinement, claiming that the prison authorities failed to provide sufficient reasons for placing him in temporary lockup. Though the matter is now technically moot because the lockup has long since ended, we are compelled to reiterate once again that a "bare listing" of reasons is insufficient to meet due process requirements. *State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 122, 289 N.W.2d 357, 362 (Ct. App. 1980).

The reason given Riley for the TLU confinement was: "If the inmate remains in the general population he will encourage others

Pursuant to Wis. Adm. Code, sec. HSS 303.11(4)(b),[2] Riley was placed in temporary lockup pending investigation into gang-related activities at the prison. The committee eventually concluded that Riley should be placed in administrative confinement, basing its decision in part upon unsworn statements by confidential informants which had been collected by a prison officer investigating gang activity. Riley appealed to the superintendent, who affirmed the committee's determination. He then sought certiorari review in circuit court.

---

by his example, expressly or by his presence, to defy staff authority and thereby erode staff's ability to control a particular situation." This "reason" is no more than a recitation of Wis. Adm. Code, sec. HSS 303.11(4)(b), the provision regulating use of TLU. While we have never required a lengthy, detailed explanation of reasons, it goes without saying that more than was provided here is necessary to sustain the officials' actions.

Our conclusion does not require reversal, however, for the limited scope of certiorari review provides no remedy for violation of Wis. Adm. Code, sec. HSS 303.11(4)(b). Riley's temporary restraint ended with the officials' decision to place him in administrative confinement. The failure to provide an adequate statement on the TLU form and the resulting temporary detention do not appear to have had any impact on the decision to place Riley in administrative confinement. The violation thus provides no basis for reversal of the committee's decision on TLU grounds. We will, however, remand this issue to the circuit court with directions to enter an order expunging any reference to Riley's temporary lockup from his prison records.

[2] Wisconsin Adm. Code, sec. HSS 303.11(4)(b) provides that an inmate may be placed in temporary lockup if it is believed that "[i]f the inmate remains in the general population, he or she will encourage other inmates by example, expressly, or by their presence, to defy staff authority and thereby erode staff's ability to control a particular situation[.]"

The court remanded the matter to the department, directing it to justify the committee's use of unsworn statements as a basis for its decision. The department conceded that the informants' statements were unsworn, but attempted to cure the defect by submitting a statement from the investigating officer indicating his belief that the informants from whom the incriminating statements had been taken were reliable sources. The court accepted the statement as adequate and denied Rileys petition.

On certiorari review, we determine *de novo* whether the department acted within its jurisdiction, whether it acted according to applicable law, whether the action was arbitrary or unreasonable, and whether the evidence supported the determination in question. *State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 119, 289 N.W.2d 357, 361 (Ct. App. 1980). An important component of the analysis is whether the department followed its own rules, "for an agency is bound by the procedural regulations which it itself has promulgated." *Id.* And it is this component which is dispositive here.

Wisconsin Administrative Code, Chapter HSS 308, governs the procedures for administrative confinement. Section HSS 308.01 states that the purpose of the chapter is "to provide for an involuntary nonpunitive status for the segregated confinement of an inmate solely because he or she is dangerous, to ensure personal safety and security within an institution." Section HSS 308.04 sets forth the procedures which the department must follow when placing an inmate in administrative confinement. These procedures include, among others, notice, a hearing by the program review committee, and a requirement that the inmate be advised of his or her rights at the review hearing. The rule also gives inmates

[t]he right to present and question witnesses in accordance with sub. 6 and the hearing procedures for major disciplinary offenses except that, in the case of a confidential informant, a designated security staff member shall investigate to determine whether testifying would pose a significant risk of bodily harm to the witness. If the designated staff member finds a significant risk of bodily harm, he or she shall attempt to obtain a signed statement *under oath* from the witness and determine that the statement is corroborated in accordance with s. HSS 303.86(4). Wis. Adm. Code, sec. HSS 308.04(4)(e)4 (emphasis added).

The circuit court initially remanded the matter with directions to the committee to determine "whether there was adequate reason for excusing confidential witnesses from testifying and which statements made by the confidential witnesses, if any, were made under oath." In response to the order, the committee submitted a document entitled "Program Review Inmate Classification Summary" which included the following statements:

Confidential statements were made to Investigative [Officer] Lt. Titter and were necessary to obtain full and accurate disclosure by inmates of the persons involved in the gang activities. The investigation reports of Lt. Titter identify inmate informants by number and the committee relied on Lt. Titter's evaluation of the reliability of the information although the statements were not sworn.

██ Based on the guards' corroboration of Riley's alleged gang-related activities and Lt. Titter's apparent belief that the informants were reliable, the trial court dismissed the petition. Given the plain language of the "confidential informant" provisions of Wis. Adm. Code,

sec. HSS 308.04(4)(e)4, we are constrained to hold that use of the informants' unsworn statements was impermissible.

The department disagrees, arguing that: (1) "the record contains constitutionally sufficient indicia of informants' reliability"; and (2) any error was "harmless" and should be "disregarded [because] it does not substantially affect the rights of the inmate," Wis. Adm. Code, sec. HSS 303.87.

██

We agree with the department that federal courts have held that as long as "the record, including the confidential record, reflects sufficient indicia of the informant's reliability," a prison disciplinary committee may consider an informant's evidence without revealing his or her name to the inmate being disciplined. *McKinney v. Meese,* 831 F.2d 728, 731 (7th Cir. 1987). However, our review of applicable sections of the Code of Federal Regulations reveals no provision similar to Wis. Adm. Code, sec. HSS 308.04(4)(e)4. *See generally,* 28 C.F.R. sec. 541.10–23 (1988). As a result, we do not consider the federal cases cited by the department to be at all persuasive.

██

The department's "harmless error" argument is similarly unavailing. As we have said, agencies are bound by their own rules. *State ex rel. Meeks,* 95 Wis. 2d at 119, 289 N.W.2d at 361. Such rules define the boundaries of an agency's authority, and when it abandons those rules the agency is acting beyond its authority. *Id.*

██

The state contends that we should ignore the committee's failure to obtain the informant's statements under oath, for it does not "substantially" affect Riley's rights. We disagree. In *State ex rel. Staples v. DHSS,*

115 Wis. 2d 363, 369, 340 N.W.2d 194, 197 (1983), the supreme court recognized that the "clear" purpose of a similar "under-oath" provision in another section of the prison disciplinary rules was "[t]o protect the accused." Indeed, the department itself, when it promulgated the procedural rules governing disposition of inmate grievances, stated that its aim was to promote the "fair treatment of inmates." Wis. Adm. Code, sec. HSS 303.01(3)(e). And sec. HSS 303.86(4), which allows the use of confidential informants' "statement[s] under oath" in prison disciplinary proceedings,[3] contains a "note" stating that the purpose of such a requirement is "[t]o protect the accused . . .." Wis. Adm. Code, sec. HSS 303.86(4) (Note). The "statement under oath" provision of sec. HSS 308.04(4)(e)4 plainly serves a similar purpose.

Thus, the department's own rules give inmates the "right to . . . question witnesses" in administrative confinement proceedings. The sole exception is in cases where evidence is provided by "confidential informants." In such cases, the rule requires the committee to designate a member of the prison security staff to perform three tasks on its behalf: (1) to "investigate [and] determine" whether requiring the informant's appearance at the hearing "would pose a significant risk of bodily harm" to him or her; (2) if such a risk is present, to "attempt to obtain a [sworn] statement . . . from the witness"; and (3) to determine that "the statement"—which can only mean the sworn statement—is corroborated. Wis. Adm. Code, sec. HSS 308.04(4)(e)4.

In this case, the record indicates only that the staff officer considered the informants' statements to be reliable. Even assuming that this meets the "corroboration"

---

[3] Because administrative confinement is not a "disciplinary" matter, the rules governing disciplinary proceedings do not apply.

requirement, there is nothing to show that requiring any or all of the informants to appear at specific hearings would pose a significant risk of harm to them; and, beyond that, there is nothing to show that the officer made any attempt to obtain their sworn statements.

When the department sets and publishes its own rules—particularly where, as here, those rules are intended to insure the "fair treatment of inmates"—it should be held to follow them. As in other cases involving review of prison disciplinary proceedings, lengthy explanations or extended discussions are not required. But there must be some indication in the record that the department has complied with the plain terms of its own rules. In a case such as this, the minimum effort necessary for compliance would be a brief statement as to why the informants would be at risk should they be called to testify at the hearing, what attempts were made to obtain their sworn statements, and why those attempts failed. Because this was not done, the committee's decision cannot stand, and the trial court's decision and order must therefore be reversed.

While conceivably we could remand the matter to allow the department to comply with the rule, we note that the trial court gave it that opportunity in the proceedings below. We have in some cases rejected inmates' "two-kicks-at-the-cat" arguments in prison disciplinary matters and allowed a "corrective" remand rather than reversing the committee's decision outright. We decline to allow a third kick in this case, however, and we reverse the decision and order, remanding the case to the trial court with directions to enter an order directing the department to expunge the record of Riley's administra-

tive confinement and of any resulting change in his status.

*By the Court.*—Decision and order reversed and cause remanded for further proceedings consistent with this opinion.