STATE of Wisconsin EX REL. Al CURTIS, Paul Price, Danny Davis, Eric Hune, Antwan Townsend, Danny Webb, and Nathaniel Dukes, Plaintiffs-Respondents,†

v.

Jon E. LITSCHER, Secretary, Wisconsin Department of Corrections, Defendant-Appellant.

Court of Appeals

*No. 01–1804. Submitted on briefs January 11, 2002.—Decided June 20, 2002.*

2002 WI App 172

(Also reported in 650 N.W.2d 43.)

† Petition to review denied 9-26-02.

787

On behalf of the defendant-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *Stan Davis*, assistant attorney general.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Howard B. Eisenberg* of *Howard B. Eisenberg Law Office* of Milwaukee.

Before Vergeront, P.J., Dykman and Roggensack, JJ.

¶ 1. ROGGENSACK, J. The seven inmate-petitioners (inmates)[1] in this certiorari action were accused of participating in a riot/hostage situation at a private, contract prison facility located in Whiteville, Tennessee. The inmates claim, and the circuit court found, that a disciplinary hearing held at the Whiteville facility on December 9, 1999 was procedurally defective and that the Wisconsin Department of Corrections (DOC) improperly relied on the findings from that hearing in subsequent proceedings. We conclude that we have authority to review the December 9, 1999 disciplinary hearing by certiorari and that, even under DOC's version of events, the Whiteville facility violated its, and DOC's, procedures by selecting a hearing examiner who witnessed the relevant events. Therefore, we invalidate the December 9, 1999 disciplinary hearing and any subsequent hearings or changes in status that relied on the hearing examiner's findings as a basis for the decision. However, we also conclude that DOC may hold administrative confinement hearings and consider the inmates' alleged conduct to the extent that conduct

---

[1] Al Curtis, Paul Price, Danny Davis, Eric Hune, Antwan Townsend, Danny Webb, and Nathaniel Dukes.

is proved without relying on the findings of the hearing examiner at the December 9, 1999 hearing. Accordingly, we affirm in part and reverse in part the order of the circuit court.

## BACKGROUND

¶ 2.   The seven inmates were confined in a private correctional facility in Whiteville, Tennessee when they were charged with violations of facility rules, classified as major offenses,[2] for allegedly participating in a riot/hostage situation that took place on November 30, 1999. An employee of the Whiteville facility conducted a disciplinary hearing on the charges on December 9, 1999. The staff member who served as the hearing examiner found all seven inmates guilty and penalized them with varying periods of disciplinary segregation.

¶ 3.   Before the inmates could serve their time in disciplinary segregation at Whiteville, DOC approved a Program Review Committee (PRC) recommendation that the inmates should be transferred to Supermax Correctional Institution in Boscobel, Wisconsin. The inmates' involvement in the Whiteville uprising was a primary factor in the transfer decisions. After being transferred to Supermax, each of the inmates was placed in administrative confinement as a result of decisions by an Administrative Confinement Review Committee (ACRC). The ACRC decisions were premised, at least in part, on the findings from the December 9, 1999 hearing in Whiteville.

---

[2] According to the Whiteville facility's internal procedures, whether a charged offense is classified as a "minor" offense or a "major" offense determines both the procedures that are to be used at the disciplinary hearing and the potential penalty that may be imposed if the inmate is found guilty.

¶ 4. The Whiteville facility's internal disciplinary procedures provide that an inmate subjected to a disciplinary penalty may appeal the hearing examiner's decision to the warden of the facility. All seven inmates pursued this avenue of appeal, raising various claims of procedural error. The warden denied all appeals.

¶ 5. At the same time that the inmates were pursuing their appeals to Whiteville's warden, they were simultaneously seeking review of the Whiteville disciplinary decisions through the Inmate Complaint Review System (ICRS) in Wisconsin and by challenging the PRC and ACRC decisions that relied on the findings of the Whiteville disciplinary proceeding. DOC consistently took the position that the inmates could not obtain review of the Whiteville disciplinary decision by filing an inmate complaint in a Wisconsin prison. Similarly, DOC repeatedly asserted that the inmates could not collaterally challenge the Whiteville proceedings by raising the issues in PRC or ACRC proceedings.

¶ 6. Following the Whiteville warden's unfavorable decisions and the inmates' unsuccessful attempts to obtain administrative review of the Whiteville proceedings through DOC in Wisconsin, two of the seven inmates attempted to obtain review of the Whiteville disciplinary decisions by initiating actions in the Tennessee courts. *See* WIS. STAT. §§ 301.21(2m)(b)[3] and 302.02(3t) (1999–2000).[4] Those filings were dismissed

---

[3] WISCONSIN STAT. § 301.21(2m)(b) provides:

> While in an institution in another state covered by a contract under this subsection, Wisconsin prisoners are subject to all provisions of law and regulation concerning the confinement of persons in that institution under the laws of that state.

[4] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

with the following explanation: "Please be advised that since you are now a resident of the State of Wisconsin you will need to make your filings in the State of Wisconsin."

¶ 7. Apparently lacking any access to the Tennessee courts, the seven inmates jointly filed a petition for a writ of certiorari on June 13, 2000 in the circuit court for Dane County. The petition states that the inmates "are hereby asking the Court to review the disciplinary decisions and actions of the [Secretary of DOC] and disciplinary officer." The prayer for relief in the petition provides:

> Wherefore, the petitioners respectfully request that a writ of certiorari be granted to bring up for review and determination the proceedings in the matters set forth in this petition, and that upon review and return of that writ, the decision and actions of the [Secretary], the disciplinary committee and the administrative confinement review committee be reversed and adjudged to be null and void.

¶ 8. DOC argued that the circuit court's authority on certiorari does not extend to review of disciplinary decisions made by officials at an out-of-state, private prison. The circuit court disagreed, concluding that because the inmates were sentenced by Wisconsin courts, they had the right to seek certiorari review of major disciplinary proceedings in Wisconsin courts when no other avenue of judicial review was available.

¶ 9. On the merits, the circuit court held that the record established that the Whiteville hearing violated the inmates' rights because (1) the hearing examiner was directly involved in the events that gave rise to the charges, and (2) the hearing examiner's report failed to state adequate reasons for the decision. The court

invalidated the disciplinary decisions and ordered DOC to conduct new PRC and ACRC hearings for each of the inmates at which DOC would not be permitted to consider the disciplinary charges that were adjudicated on December 9, 1999 or any information relating to the November 30, 1999 uprising at Whiteville.

## DISCUSSION

### Standard of Review.

¶ 10.    We review the decision of the administrative agency, not the decision of the circuit court. *State ex rel. Sprewell v. McCaughtry*, 226 Wis. 2d 389, 393, 595 N.W.2d 39, 41 (Ct. App. 1999). Whether the scope of our review reaches the issues raised in a certiorari petition presents a question of law, and if we have authority to reach the issues, we decide *de novo* whether the administrative body acted within its jurisdiction, whether it acted according to applicable law, whether its action was arbitrary and unreasonable, and whether the evidence supported the determination in question. *Id.*; *see also State ex rel. Kaczkowski v. Fire & Police Comm'rs*, 33 Wis. 2d 488, 501–02, 148 N.W.2d 44, 51 (1967) (determining the scope of the court's authority on certiorari review in an appeal that followed statutory judicial review of the decision of a board of police and fire commissioners).

### Availability of Certiorari Review.

¶ 11.    DOC first argues that Wisconsin courts do not have authority to review prison disciplinary decisions made at an out-of-state, private prison. Under the circumstances presented in this case, we disagree.

¶ 12.   A decision may be reviewed by common law certiorari when no legislative provision establishes how review may be had. *State ex rel. Smits v. City of De Pere,* 104 Wis. 2d 26, 31, 310 N.W.2d 607, 609 (1981). Certiorari is the well-established mode of judicial review for inmates of Wisconsin prisons who seek to challenge prison disciplinary decisions. *See State ex rel. Shimkus v. Sondalle,* 2000 WI App 238, ¶¶ 1, 14, 239 Wis. 2d 327, 620 N.W.2d 409; *State ex rel. Meeks v. Gagnon,* 95 Wis. 2d 115, 119, 289 N.W.2d 357, 361 (Ct. App. 1980). And, although the legislature has provided that judicial review of disciplinary proceedings conducted by an out-of-state, contract prison may proceed in the county of the state where the prison is located, *see* WIS. STAT. § 302.02(3t),[5] unique circumstances in this case precluded this provision from affording the inmates judicial review in Tennessee.

¶ 13.   Here, DOC transferred the inmates to a Wisconsin prison immediately after the disciplinary hearing. Once the inmates were returned to Wisconsin, the Tennessee court refused to review their cases. Because no statutory provision for judicial review of a prison disciplinary decision applied to the inmates in this case, we conclude that Wisconsin courts may review the Whiteville disciplinary decision by certiorari.

---

[5] WISCONSIN STAT. § 302.02(3t) provides:

> INSTITUTIONS LOCATED IN OTHER STATES. For all purposes of discipline and for judicial proceedings, each institution that is located in another state and authorized for use under s. 301.21 and the precincts of the institution shall be deemed to be in a county in which the institution is physically located, and the courts of that county shall have jurisdiction of any activity, wherever located, conducted by the institution.

¶ 14. DOC contends that, regardless of the availability or unavailability of judicial review in the Tennessee courts, our authority does not extend to a review of the disciplinary decisions of a private, out-of-state prison that houses Wisconsin inmates by contract. Again, we disagree. Although DOC has the statutory power to delegate some of its administrative functions to private prison facilities by contract, the contract facility performs those functions as agents of DOC and the State.[6] *See* Wis. Stat. § 301.03(2) (mandating that DOC shall "[s]uper*r*ise the custody and discipline of all prisoners"). DOC's contract with the private facility in Whiteville neither absolves DOC from ultimate responsibility for the performance of its assigned administrative functions nor precludes Wisconsin courts from conducting certiorari review of the disciplinary hearings in this case. Accordingly, we conclude that we have authority to review the issues raised by the inmates' petition for a writ of certiorari.[7]

---

[6] As the facts of this case demonstrate, disciplinary decisions made at and by an out-of-state, private facility become part of the prisoner's record, and DOC relies on those decisions in later proceedings involving the prisoner. We note that DOC has disclaimed any authority to collaterally review the procedural and substantive validity of the private facility's disciplinary decisions in later proceedings (*e.g.*, PRC and ACRC proceedings). Accordingly, DOC itself has a need for assurances that the disciplinary decisions are valid. One function of judicial review is to examine the validity of such proceedings. Additionally, the existence of Wis. Stat. § 302.02(3t) demonstrates that the legislature intended inmates of contract facilities to have access to judicial review.

[7] DOC does not raise an issue concerning the inmates' exhaustion of administrative remedies in regard to their attempts to obtain review of the disciplinary decision.

**Hearing Procedures.**

¶ 15. A determination on certiorari review of whether a prison disciplinary hearing was conducted according to law includes a review of whether the hearing comported with the constitutional requirements of due process. *State ex rel. Meeks*, 95 Wis. 2d at 119, 289 N.W.2d at 361. However, even in the absence of a claim of constitutional dimension, an agency is required to follow its own procedural rules, and our certiorari inquiry encompasses the question of whether the agency has done so. *See id.* An agency acts beyond its authority when it abandons its own rules. *State ex rel. Riley v. DHSS*, 151 Wis. 2d 618, 625, 445 N.W.2d 693, 695 (Ct. App. 1989).

¶ 16. The inmates' petition alleges that the disciplinary hearing conducted by the hearing examiner at the Whiteville facility failed to conform to DOC's and Whiteville's procedures and also violated the inmates' due process rights. One of the inmates' primary contentions is that their December 9, 1999 disciplinary hearing was conducted by a hearing examiner who was directly involved in the riot/hostage situation that gave rise to the various charges. The inmates assert that under both DOC regulations and the internal disciplinary procedures of the Whiteville facility, the inmates have a basic procedural right to a hearing that is conducted by an impartial examiner.

¶ 17. WISCONSIN ADMIN. CODE § DOC 303.82 (1999) provides that due process disciplinary hearings shall be conducted by an adjustment committee and that "[n]o person who has personally observed or been a part of an incident which is the subject of a hearing may serve on the committee for that hearing." We note that the

Whiteville facility's internal disciplinary procedures contain a similar provision:

SELECTION OF THE BOARD OR HEARING OF-FICER

    a. The Disciplinary Board or Hearing Officer will be designated by the Warden/Administrator and will be impartial and fair.

. . . .

    d. Any staff will be disqualified in every case in which they have filed the complaint, participated or witnessed the incident; investigated the incident; is the person in charge of any subsequent review of the decision; or has any personal interest in the outcome.

¶ 18.  DOC asserts that because there is no evidence in the certiorari record concerning the status of the hearing examiner, the inmates cannot obtain certiorari review of this issue. Had the inmates not raised the issue of the hearing examiner's bias in their attempts to seek review of the disciplinary decision, we might agree with DOC. However, we have previously held that if a prisoner wishes to preserve for judicial review an issue that is "seldom reflected in the administrative record," the inmate bears the burden of clearly presenting the issue for the record by raising the issue during the hearing or during the administrative appeal. *See State ex rel. Ortega v. McCaughtry*, 221 Wis. 2d 376, 394–96, 585 N.W.2d 640, 649–50 (Ct. App. 1998). The purpose of this requirement is to direct administrative attention to and provide a more specific record of the grounds for the prisoner's complaint. *Id.* at 396, 585 N.W.2d at 650.

¶ 19.  The issue of the hearing examiner's bias was raised in at least some appeals to the warden. The

warden's response to the appeals was to affirm the hearing examiner by circling a line on the appeal forms that reads: "Concur with findings and Penalty." The warden did not expressly address the issue of the hearing examiner's alleged bias, and although the record is not a model of clarity, DOC admits that the hearing examiner was a witness to the alleged conduct of some inmates. DOC explained to the circuit court that:

> [The hearing examiner] was involved at the beginning of the case, he tried to get into the room to assist, but was told by inmates that if he came in, people would be killed because they didn't want him in there or people would be injured because they didn't want him in there. He then left.

Permitting a person with this level of personal involvement to act as a hearing examiner violated both DOC's and Whiteville's rules.

¶ 20. The inmates' allegation of hearing examiner bias and DOC's admission that the hearing examiner was a witness raise significant concerns. First, neither Whiteville nor DOC has authority to conduct a disciplinary hearing that fails to comply with its own duly promulgated procedures. And, because the hearing examiner was a witness to the riot/hostage situation at the Whiteville facility, he should have been disqualified under both WIS. ADMIN. CODE § DOC 303.82 and the Whiteville facility's internal disciplinary procedures. Second, the presence of a biased hearing examiner at a disciplinary hearing concerning a major rule violation raises due process concerns comparable to those addressed by the Wisconsin Supreme Court in *State ex rel. Anderson-El v. Cooke*, 2000 WI 40, ¶¶ 16, 24–25, 234

Wis. 2d 626, 610 N.W.2d 821 (holding that DOC's failure to provide a prisoner with a notice of hearing both violated DOC's procedures and denied the prisoner a fundamental procedural right).[8] Prison hearing procedures that touch on basic procedural rights are enacted for the protection of prisoners, and as the supreme court instructed in *Anderson-El*, failure to follow those types of procedures cannot be considered harmless error. *Id.* at ¶¶ 24–25; *see also State ex rel. Riley*, 151 Wis. 2d at 625–26, 445 N.W.2d at 696. Accordingly, under the facts presented in this case, we decline to conclude that the inmates waived their claims by failing to clearly raise the issue of hearing examiner bias at the hearing itself.

**Remedy.**

¶ 21. In some past cases involving procedural issues, we have remanded disciplinary decisions and allowed prison officials to supplement a deficient certio-

---

[8] DOC contends that the inmates in this case have no claims of constitutional dimension because they did not lose good time credits or suffer an extension of their mandatory release date. As far as the nature of the penalties the inmates faced and the penalties actually imposed by the hearing examiner, we conclude that this case is factually indistinguishable from *State ex rel. Anderson-El v. Cooke*, 2000 WI 40, 234 Wis. 2d 626, 610 N.W.2d 821. The supreme court was clear in *Anderson-El* that an agency's violation of disciplinary regulations that touch on basic procedural rights is an issue that raises constitutional concerns. We conclude that disciplinary procedures that provide for a neutral and unbiased hearing examiner reach basic procedural rights. *Cf. State v. Horn*, 226 Wis. 2d 637, 653, 594 N.W.2d 772, 780 (1999) (holding in the context of probation revocation proceedings that due process requires that a person appear before a neutral and detached hearing officer).

rari record, provided that the remand did not involve the taking of new substantive evidence against the prisoner. *See, e.g., State ex rel. Meeks*, 95 Wis. 2d at 128–29, 289 N.W.2d at 365. However, as a matter of judicial economy, and considering the already lengthy history of these proceedings, we can see no benefit to be obtained from remanding this case for another round of disciplinary hearings.[9] Accordingly, we affirm the circuit court's remedial order to the extent that it invalidated (1) the inmates' December 9, 1999 disciplinary hearing and (2) any subsequent hearing or change in status that relied on the findings from that hearing. DOC shall expunge any reference to such proceedings from the inmates' records.

¶ 22.   However, a significant dispute remains as to whether DOC may consider evidence of the inmates' conduct on November 30, 1999 in future administrative confinement hearings. DOC argues that although invalidating the December 9, 1999 disciplinary proceedings would foreclose DOC from relying on the findings of the Whiteville hearing examiner at any future administrative confinement proceeding, DOC should be permitted to consider other information related to the Whiteville riot/hostage situation to the extent it proves conduct that meets the standard for administrative confinement. We agree.

¶ 23.   The purpose of administrative confinement "is to provide for an involuntary nonpunitive status for the segregated confinement of an inmate whose continued presence in general population poses a serious threat to life, property, self, staff, or other inmates, or to

---

[9] DOC disclaims any interest in conducting new disciplinary hearings.

the security of the institution." WIS. ADMIN. CODE § DOC 308.01. An inmate may be placed in administrative confinement for any of the following reasons:

> (a) The inmate presents a substantial risk to another person, self, or institution security as evidenced by a behavior or a history of homicidal, assaultive or other violent behavior or by an attempt or threat to cause that harm.

> (b) The inmate's presence in the general population poses a substantial risk to another person, self or institution security.

> (c) The inmate's activity gives a staff member reason to believe that the inmate's continued presence in general population will result in a riot or a disturbance.

> (d) The inmate has been identified as having an active affiliation with an inmate gang or street gang or there are reasonable grounds to believe that the inmate has an active affiliation with an inmate gang or street gang; and there is reason to believe that the inmate's continued presence in the general population will result in a riot or a disturbance.

WIS. ADMIN. CODE § DOC 308.04(2).

¶ 24. While DOC regulations require that inmate misconduct "shall be handled through the disciplinary procedures," WIS. ADMIN. CODE § DOC 308.04(1), we do not construe this language to require a disciplinary hearing on alleged conduct that may violate a prison rule prior to any consideration of the conduct for purposes of administrative confinement. Rather, the requirement that misconduct be handled through disciplinary procedures simply indicates the different purposes of inmate discipline and administrative confinement and the different standards that apply in each

type of proceeding.[10] Our interpretation of § DOC 308.04(1) is aided by the notes to ch. 308, which state that administrative confinement "cannot be a penalty for misconduct, but may result either prior to or subsequent to a disciplinary proceeding *or independent of* any such proceeding." (Emphasis added.) Accordingly, the same inmate conduct may be relevant for purposes of both disciplinary proceedings and administrative confinement proceedings if the conduct both violates a statute or administrative rule and satisfies the standard for initiating administrative confinement. However, as the notes to ch. 308 suggest, those standards are independent.

¶ 25. The consequence of holding an administrative confinement hearing after a prior disciplinary hearing on the same conduct has been invalidated is that the relevant conduct must be proven *de novo* with evidence presented at the administrative confinement hearing and without any reference to the factual findings of the disciplinary committee or hearing examiner. Significantly, the inmate is free to challenge the allegations and the evidence at the administrative confinement hearing, as provided in Wis. Admin. Code § DOC 308.04.

¶ 26. Because we conclude that DOC may consider evidence of the inmates' conduct at the Whiteville facility on November 30, 1999 in future administrative confinement hearings, we reverse the decision of the circuit court to the extent it precluded DOC from considering such evidence. DOC may hold administrative confinement hearings to determine whether there

---

[10] In a disciplinary proceeding, the relevant question is whether the prisoner's conduct violated one or more statutes or administrative rules of the department that define an offense.

is a current need to place one or more of the inmates in that nonpunitive status. At any such hearing, DOC must prove the inmate's November 30, 1999 conduct without reference to the findings from the invalidated disciplinary hearing. The inmates shall have all the rights afforded to prisoners under WIS. ADMIN. CODE § DOC 308.04, including the right to present and question witnesses. If a witness possessing relevant, non-cumulative evidence is requested by an inmate and the requested witness is not now available, and if the inmate shows that no other witness can provide the relevant testimony and DOC is unable to secure a statement from the requested witness, then the inmate has been prejudiced through no fault of his own and we expect DOC to abandon any attempt to prove that inmate's November 30, 1999 conduct. *See State ex rel. Meeks,* 95 Wis. 2d at 129, 289 N.W.2d at 365. Finally, because DOC should assess the current need for administrative confinement, events subsequent to November 30, 1999 will be relevant to any hearings.

¶ 27. DOC asks this court to vacate the circuit court's finding that DOC retaliated against some of the inmates by placing them in temporary lock up after a court-ordered transfer from Supermax to other correctional institutions. As the circuit court's finding of retaliation was intertwined with the remedial orders of that court and because we have substantially departed from those remedial orders, we conclude that the issue is moot. However, as a means of transitioning from the circuit court's remedial orders to those that we have set forth above, we further order that the inmates' security classification and confinement status shall not be affected by any allegations related to their conduct on

November 30, 1999 until such time as DOC holds an administrative confinement hearing in accordance with this decision.

## CONCLUSION

¶ 28. We conclude that we have authority to review the December 9, 1999 disciplinary hearings by certiorari and that, even under DOC's version of events, the Whiteville facility violated its, and DOC's, disciplinary procedures by selecting a hearing examiner who witnessed the relevant events. Therefore, we invalidate the December 9, 1999 disciplinary hearing and any subsequent hearing or change in status that relied on the findings from that hearing as a basis for the decision. However, we also conclude that DOC may hold administrative confinement hearings and consider the inmates' alleged conduct to the extent that conduct is proved without relying on the findings from the December 9, 1999 hearing. Accordingly, we affirm in part and reverse in part the order of the circuit court.

*By the Court.*—Order affirmed in part and reversed in part.