COURT OF APPEALS
DECISION
DATED AND FILED

May 21, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP628**

STATE OF WISCONSIN

Cir. Ct. No. 2018CV1073

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN EX REL. FERNANDO TORRES,

PETITIONER-APPELLANT,

V.

ROBERT HUMPHREYS,

RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Dane County: PETER C. ANDERSON, Judge. *Affirmed.*

Before Blanchard, Kloppenburg, and Nashold.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Fernando Torres, a prison inmate, seeks certiorari review of an order denying his appeal from a prison disciplinary decision.  He raises both substantive and procedural issues.  For the reasons discussed below, we reject all of Torres' arguments and affirm.

BACKGROUND

¶2     This appeal arises out of a prison conduct report charging Torres with assaulting another inmate.  According to the report, inmate L.J. approached a staff member at the Kettle Moraine Correctional Institution and said that he had slipped in a bathroom and hit his face against a stall door.  L.J. was provided medical treatment in the prison health services unit and then transported to a local hospital for further treatment.  The staff member then reviewed surveillance camera footage that showed Torres and L.J. talking before both entered the bathroom.  Torres could be seen through the doorway of the bathroom swinging a closed fist in L.J.'s direction.

¶3     Staff member D.S. Yang was assigned as an advocate to assist Torres in preparing for a hearing on the charge.  Yang prepared a form requesting that an inmate attend the hearing as a defense witness who had been in the bathroom during the incident.  However, on the day of the hearing, Torres notified another staff member that Yang had requested the presence of the wrong witness.  The other staff member then arranged to have Kenneth Boivin appear at the hearing.

¶4     Boivin told the hearing committee that he had been in the bathroom during the incident.  He said that Torres did not hit L.J.  Rather, L.J. slipped and fell face first into the stall divider, when he was near the door.  Torres also gave a statement at the hearing denying that he had assaulted L.J.  Torres claimed that he

had been shadow boxing when L.J. slipped on the wet floor and hit his face. Torres said that L.J. was at a sink on the other side of the bathroom when Torres was shadow boxing, and that L.J. did not slip and fall until a minute later when he was leaving the bathroom. The committee then reviewed the surveillance video out of the presence of Torres.

¶5     The hearing committee found Torres guilty, based upon the surveillance video and a photograph of L.J.'s injured face, which had not been disclosed to Torres prior to the hearing. The committee interpreted the video as showing that Torres and L.J. "had words in front of the officer station prior to them both entering the bathroom" and that Torres then punched a person with his closed fist in the area where Boivin had indicated that L.J. was standing at the time. The committee also viewed L.J.'s injuries as consistent with having been struck in the face with a closed fist.

¶6     As required by administrative rules, Torres appealed the substance of the disciplinary decision directly to the warden and raised a number of procedural challenges to the decision through the Inmate Complaint Review System (ICRS). *See* WIS. ADMIN. CODE §§ DOC 303.76(7) and DOC 310.08(3) (April 2020).[1]   After exhausting his administrative remedies, Torres sought certiorari review in the circuit court. The circuit court affirmed the disciplinary decision and Torres appeals.

---

[1]  All references to the Wisconsin Administrative Code are to the April 2020 Register.

3

## STANDARD OF REVIEW

¶7      On a writ of certiorari, we review the actions of the administrative agency, rather than those of the circuit court. *See **State ex rel. Saenz v. Husz***, 198 Wis. 2d 72, 76-77, 542 N.W.2d 462 (Ct. App. 1995). With regard to the substance of a prison disciplinary decision, we will consider only whether: (1) the warden or other designated prison officials stayed within their jurisdiction, (2) they acted according to law, (3) their decision reflected reasoned judgment rather than an arbitrary imposition of will, and (4) the evidence was such that they might reasonably make the order or determination in question. ***State ex rel. Purifoy v. Malone***, 2002 WI App 151, ¶13, 256 Wis. 2d 98, 648 N.W.2d 1. Under this standard, we presume that the prison officials' decision was valid, we will not set aside their factual findings if they are supported by any reasonable view of the evidence, and we will not substitute our discretion for theirs. *See **id.***; ***State ex rel. Ortega v. McCaughtry***, 221 Wis. 2d 376, 386, 585 N.W.2d 640 (Ct. App. 1998). However, we may independently determine whether due process was afforded as part of our inquiry into whether prison officials acted according to law. ***State ex rel. Curtis v. Litscher***, 2002 WI App 172, ¶15, 256 Wis. 2d 787, 650 N.W.2d 43 (citation omitted).

## DISCUSSION

¶8      Torres raises seven issues on appeal, which we will address in turn.

¶9      First, Torres argues that the disciplinary decision was not supported by substantial evidence in the record. He contends that the surveillance video is not probative because it does not actually show whether his punch connected with L.J. Torres further argues that the photograph of L.J.'s injured face is not probative because it was not accompanied by any expert medical or forensic

opinion as to how the injury could have been caused. Torres also points out that the staff member who wrote the conduct report did not witness the incident; did not observe any injury to Torres' hand; and did not report whether the bathroom floor was wet or whether there was blood on the stall door or divider where L.J., Torres, and Boivin all claimed that L.J. had fallen. Torres then characterizes the disciplinary decision as being based upon nothing but "impermissible inferences." We disagree.

¶10 An inmate is guilty of assault when he or she "[c]auses bodily harm to another." WIS. ADMIN. CODE § DOC 303.11. Torres does not dispute that L.J. suffered bodily harm in the bathroom, and that fact is directly supported by the photograph of L.J.'s injured face. It is true that the evidence supporting causation in this case is circumstantial in nature, requiring inferences to be drawn from what is seen on the surveillance video. However, circumstantial evidence is not "impermissible." To the contrary, it is not only sufficient to meet a burden of proof, "'but may also be more certain, satisfying and persuasive than direct evidence.'" *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003) (quoted source omitted). Here, the inference that Torres caused L.J.'s injury is supported by the appearance that they "had words" just before entering the bathroom one after the other, and the timing of the swing Torres took immediately after the two entered the bathroom and shortly before an injured L.J. exited the bathroom. In sum, the committee could reasonably rely on the surveillance video and photograph as substantial evidence supporting the charge against Torres.

¶11 Second, Torres argues that the hearing committee failed to find that it was "more likely than not" that he had committed the offense, as required by WIS. ADMIN. CODE § DOC 303.80(6)(c), thus imposing its will, rather than its judgment. However, the committee satisfied its obligation under the code to

5

determine that the burden of proof had been met when it stated that it "believes that Inmate Torres is guilty of 303.11 Assault." It was not necessary for the committee to use the exact words "more likely than not."

¶12 Third, Torres argues that the hearing committee failed to consider the exculpatory statement made by L.J. and did not explain why it did not find L.J.'s own explanation of how he was injured to be credible. However, the committee stated that it had considered the conduct report, which contained L.J.'s exculpatory statement. It is inherent in the committee's expressed view of what the video and photograph showed that they deemed the statement of L.J. not to be credible because it conflicted with the video and photograph.

¶13 Fourth, Torres argues that the committee violated his due process rights by refusing to allow him to view the surveillance video and failing to disclose the photograph of L.J. prior to the hearing. However, an inmate does not have the same due process rights in a disciplinary hearing as a defendant does in a criminal trial, because there is a lesser liberty interest at stake. Due process at a disciplinary hearing requires only: (1) written notice of the charges; (2) a written statement of the evidence relied on and the reasons for the disciplinary decision; and (3) the opportunity to call witnesses and present documentary evidence in defense so long as it does not jeopardize institutional safety or correctional goals. *Jackson v. Buchler*, 2010 WI 135, ¶50, 330 Wis. 2d 279, 793 N.W.2d 826 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)). Neither due process nor the administrative code provide an inmate with the additional right to pre-hearing discovery in prison disciplinary cases. *Ortega*, 221 Wis. 2d at 389-90; *see also* WIS. ADMIN. CODE § DOC 303.80(1)(e)(1). Moreover, even if an inmate had a right to obtain or view exculpatory evidence in a prison disciplinary context, the surveillance video and photograph of Torres's injured face were not exculpatory.

*See Buchler*, 330 Wis. 2d 279, ¶72 (no need to provide inmate with footage from inconclusive video).

¶14 Fifth, Torres argues that his staff advocate failed to assist him by interviewing and gathering statements from potential witnesses. During the ICRS process, Torres presented affidavits summarizing statements from two persons whom he contended could have provided such evidence. Inmate Elmer Golan, who was L.J.'s cellmate and had a prison job as a janitor, averred that at the time in question the bathroom floor was wet from a leaky toilet and that L.J. told Golan that L.J. had slipped and fallen on the wet floor. Inmate Ryan Krupp averred that he had overheard L.J. telling a staff member that he had been injured from falling in the bathroom, and that L.J. had spoken several times about past instances in which L.J. had sued DOC employees for "slip and fall" accidents.

¶15 However, a staff advocate has limited duties under the administrative code—namely to give an inmate basic guidance about the hearing procedure. WIS. ADMIN. CODE § DOC 303.83(3). There is no duty to investigate on behalf of the inmate. In any event, the proffered affidavits of the additional potential witnesses would not have been likely to alter the outcome of the disciplinary proceeding, because neither inmate averred that he had directly observed the incident or was in any position to contradict the inferences the committee drew from the surveillance video and photograph.

¶16 Sixth, Torres asserts that he did not waive any of his procedural claims by failing to exhaust his administrative remedies. We do not need to discuss this issue because we have addressed all of Torres' claims on their merits.

¶17 Finally, Torres argues that the circuit court erroneously exercised its discretion by adding its own description of what the surveillance video showed

7

through the bathroom doorway—including what appeared to be L.J.'s left foot in the direction where Torres threw his punch and a leg swinging out after the punch was thrown as if someone were falling backwards. However, as we stated above, we do not review the circuit court's decision on certiorari review. We have already explained why the hearing committee's interpretation of the surveillance video was reasonable.

*By the Court*.—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).